544 P.2d 213

The STATE of Arizona, Appellee,

v.

David Jay SMITH, Appellant.

No. 3251.

Supreme Court of Arizona,
In Banc.

Dec. 23, 1975.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Cleon M. Duke, Asst. Attys. Gen., Phoenix, for appellee.

F. M. Aspey, Flagstaff, for appellant.

CAMERON, Chief Justice.

This is an appeal by David J. Smith from a judgment of guilt to misdemeanor possession of marijuana, A.R.S. § 36–1002.-05, and felony possession of dangerous drugs, A.R.S. § 32–1970.

On appeal, defendant attacks only the denial of his motion to suppress evidence raising the following questions:

1. Was the initial "pat-down" of defendant an unlawful search and eizure?

2. Did the police officers act lawfully in "securing" defendant's premises while they obtained a search warrant?

3. Should the search warrant have been ruled invalid due to the State's failure to produce the supporting affidavit?

4. Was there probable cause for the issuance of the warrant?

The facts necessary for the determination of the above questions are as follows. On 1 September 1974, at approximately 6:50 a. m., Deputy LaBarbera of the Coconino County Sheriff's Office was dispatched to investigate a one vehicle accident near Flagstaff, Arizona. Upon reaching the scene, the deputy observed a 1962 Studebaker which had run off the left side of the road and struck a gas meter; he was informed by a witness at the scene that the driver of the vehicle had left the area on foot. Deputy LaBarbera called for a check on the car's registration and opened the left front door, looking for evidence of ownership. He noticed inside the vehicle a disposable plastic hypodermic syringe and an opened envelope addressed to David Smith, Route 2, Box 201, Flagstaff. The deputy read the letter inside the envelope which contained an offer to purchase a "keg of bennies" for $4,000. Before leaving the scene, Deputy LaBarbera received information that the vehicle was registered to Clarence A. or Florence Smith.

The deputy then went to the address on the envelope and knocked on the door of a house trailer located there. An individual, later identified as Mark Ryan Seeger, answered the door and stated that David J. Smith lived there. Defendant Smith then appeared and stepped out of the trailer. In response to Deputy LaBarbera's questions, defendant stated that he was David J. Smith and that he had been driving a white Studebaker which had run off the road. According to the deputy's testimony, defendant was staggering, his speech was slurred and his clothing was unkempt.

Deputy LaBarbera then informed defendant that he was going to transport defendant to the accident scene and proceeded to pat-down the defendant for weapons. Again according to the deputy's testimony, defendant was not then under arrest and could have refused to go to the accident scene. Deputy LaBarbera further has testified that he had knowledge of no objective facts indicating that defendant was armed, but that he performed the pat-down pursuant to "departmental policy." During the course of the pat-down, Deputy LaBarbera discovered and seized a blackened metal spoon which was in defendant's left rear pocket and a clear plastic bag containing pills, which was partially protruding from defendant's right front pocket.

At that point, Deputy LaBarbera informed defendant that he was under arrest. Defendant attempted to flee, but was physically subdued by Deputy LaBarbera and another officer. After defendant was in custody, Deputy LaBarbera continued his search of defendant's person and discovered a sum of money in excess of $4,000 in defendant's right front pocket. Defendant was then transported to Coconino County Jail.

The officers then returned to the house trailer and proceeded to "secure" the premises by posting a police officer on the premises and not allowing any person or material to enter or leave the premises.

Mark Seeger, who was inside the trailer, objected to the procedure and was placed under arrest for obstructing justice, A.R.S. § 13–541; that charge was later dismissed.

After the trailer was "secured," Deputy LaBarbera went before a Flagstaff City Magistrate and obtained a search warrant. The affidavit underlying the warrant has never been produced at any subsequent stage of the proceedings and the parties have stipulated that it was lost.

After obtaining the warrant, Deputy LaBarbera returned to defendant's house trailer and, along with several other officers, conducted a search of the premises. The search revealed various items of contraband, including the marijuana underlying the present charge of possession of marijuana.

Defendant moved to suppress the evidence seized pursuant to the various searches described above; the motion was denied by order dated 3 December 1974. Defendant then waived his right to trial by jury and, pursuant to a stipulation between defendant and the State, was tried on the basis of the testimony adduced at the pretrial hearings. He was convicted on both charges. On the marijuana charge, the trial court suspended sentence for one year and ordered, as conditions of probation, that defendant spend 6 months in Coconino County Jail and participate in a drug rehabilitation program. On the dangerous drugs charge the court suspended sentence for two years and ordered, as conditions of probation, that defendant spend 6 months in the Coconino County Jail and participate in a drug rehabilitation program. The conditions of probation on the two charges were ordered to run concurrently, and have been stayed pending this appeal.

## THE PAT–DOWN SEARCH

■ Defendant argues that the motion to suppress should have been granted on the grounds that the initial pat-down search conducted by Deputy LaBarbera was unlawful. Defendant relies heavily on the California Supreme Court case *People v. Superior Court of Los Angeles County* (*Simon*), 7 Cal.3d 186, 101 Cal.Rptr. 837, 496 P.2d 1205 (1972). The California Supreme Court in *Simon, supra,* held that:

> " * * * when a police officer observes a traffic violation and stops the motorist for the purpose of issuing a citation, a patdown search for weapons as an incident to that arrest must be predicated on specific facts or circumstances giving the officer reasonable grounds to believe that a weapon is secreted on the motorist's person." 7 Cal.3d at 206, 101 Cal.Rptr. at 852, 496 P.2d at 1220.

However, in his concurring opinion in that case, Chief Justice Wright noted that:

> "[t]he majority * * * does not reach the question whether the police may make a *pat-down search* prior to [the transportation of a traffic law violator to a magistrate]." 7 Cal.3d at 212, 101 Cal.Rptr. at 856, 496 P.2d at 1224.

The Chief Justice went on to indicate that he would approve such a search stating:

> " * * * When it becomes necessary that an officer confine a traffic law violator within his police vehicle, the officer risks the danger that the violator may be armed with and draw a weapon. This danger is not necessarily eliminated by handcuffing the traffic law violator as he may still be able to reach a weapon secreted on his person. And, incident to the entire process of transportation, it may be impossible for the officer to keep the violator under constant surveillance by reason of the requirements of driving the vehicle and other responsibilities. (footnote omitted) In my opinion, the specifically articulable fact of the increased danger to the officer reasonably warrants the limited or relatively minor intrusion of the pat-down search in those instances when traffic law violators are transported to a magistrate. * * *" 7 Cal.3d at 214, 101 Cal.Rptr. at 857, 496 P.2d at 1225.

And a later California Court of Appeals case, in a non-arrest situation, has stated:

"We see no reason to differentiate the risks involved in the transportation of a person in a police vehicle in a *non-arrest* situation from the risks involved in transportation in a traffic *arrest* situation. In fact, the increased likelihood of danger to an officer caused by confinement of the person to be transported in his vehicle is even greater in a non-arrest situation, since that person will not be in handcuffs or otherwise restrained.

"We conclude that the element of transportation in a police vehicle is a special circumstance which justifies a *pat-down search* of the individual to be transported in a *non-arrest* situation. (citation omitted)." *People v. Superior Court In and For County of Marin (Scott)*, 35 Cal.App.3d 621, 110 Cal.Rptr. 875, 880 (1973). See also *Peter v. State*, Alaska, 531 P.2d 1263 (1975).

We agree what whenever an individual is to be transported in a police vehicle, a pat-down search is reasonable, proper, and lawful for the protection of the officer. We find no error.

## SECURING THE PREMISES

■ Defendant, again relying on California cases, argues that the actions of the police officers in "securing" the trailer were unlawful and that all evidence seized under the warrant is therefore tainted and must be suppressed. We disagree.

If the warrant was properly issued the search in response thereto was a proper search and seizure and the fact that the premises may have been illegally secured does not operate to nullify the effect of the search warrant. The fact that defendant or his friends were deprived of the opportunity to destroy the evidence while the officers went to obtain a search warrant does not make the warrant infirm as Justice Cole in his dissent stated:

"It is stultifying to suggest that a causal link between illegal detention and seizure under the warrant exists because petitioner * * * was deprived of the opportunity to destroy the marijuana and amphetamines." *Shuey v. Superior Court For County of Los Angeles*, 30 Cal.App.3d 535, 547, 106 Cal.Rptr. 452, 460, n. 1 (1973).

Also we do not find the officers' actions herein in securing the premises were such that they should be disapproved by this court.

It may well be that had the facts been developed on this point that the officer, on the basis of exigent circumstances, would have had the right to search the premises without first obtaining a warrant. Instead he chose to secure the premises and seek out a magistrate for a warrant. The officers' actions were preferable to searching the premises without a warrant and complied with both the letter and the spirit of the law. We find no error.

## THE LOST AFFIDAVIT

Deputy LaBarbera testified on three different occasions as to the contents of the affidavit. At the 9 September 1974 preliminary hearing, he testified as follows:

"Q  Exactly what facts did you list in your affidavit?

"A  I do not have a copy of the affidavit here with me.

"Q  Well, to the best of your recollection what facts did you list in your affidavit?

"A  The fact that Mr. Smith had come out of the trailer house in question with narcotic drugs, what was believed to be narcotic drugs in his possession, a large amount of money, narcotic paraphernalia. He had tried to grab the bag of what was believed to be narcotic drugs and run, and the fact that a hypodermic disposable syringe was found in the vehicle in an envelope with that address in David Smith's name placing an order or receiving an order by a person stating that he would

pay $4,000 for a keg which is 250,000 bennies."

At a second preliminary hearing, on charges not contained in the original information, held on 23 September 1974, Deputy LaBarbera testified as follows:

"Q Now, I'd like to direct some questions to you regarding the search warrant. What information did you put into your affidavit when you went before Judge Brown?

"A I do not have a copy of my affidavit. To the best of my recollection I stated that Mr. Smith had been placed under arrest for possession of narcotic drugs and a large amount of narcotic drugs was found in his possession, a large amount of American currency.

He was seen leaving the trailer and admitted living at the trailer. We felt there was also—there could be narcotics or narcotics paraphernalia in the trailer.

"Q Is that all the information?

"A There's probably much more, but that's the best—in general, that's it."

At the omnibus hearing, held on 6 November 1974, Deputy LaBarbera testified as follows:

"DIRECT EXAMINATION

\* \* \* \* \* \*

"Q Do you recall what you put in that affidavit of probable cause?

"A Yes, sir. I stated due to the large amount of narcotic drugs found in Mr. Smith's possession, the fact that he had just exited the mobile home, the fact that a plastic hypodermic syringe and letter containing the address of the mobile home with an order from a person stating he would pay $4,000 for a keg of bennies, the fact that Mr. Smith tried to avoid arrest, the fact that I did find narcotics paraphernalia in Mr. Smith's possession gave me cause to believe that there were more narcotic drugs on the premises.

"Q To the best of your recollection, those are the items that were listed in that affidavit?

"A Yes, sir.

\* \* \* \* \* \*

CROSS EXAMINATION

\* \* \* \* \* \*

"Q Did you ever tell Judge Brown that you found a letter addressed to Dave Smith in the Studebaker?

"A I don't remember.

"Q Well, it's fairly important.

I believe on direct examination you indicated that you did. Did you, or did you not?

"A I believe I did, sir. The fact that the order was for $4,000 for a large amount of narcotics.

"Q Okay. Now I'd like to direct your attention again to the September 23rd, 1974, preliminary hearing transcript, Page 31, Line 6 through 16. I asked you what information you put in your affidavit and you replied. ANSWER: 'I do not have a copy of my affidavit. To the best of my recollection I stated that Mr. Smith had been placed under arrest for possession of narcotic drugs and a large amount of narcotic drugs was found in his possession. A large amount of American currency. He was seen leaving the trailer and admitted living at the trailer. We felt there was, also there could be narcotics or narcotics paraphernalia in the trailer.'

Did you make that statement?

"A I believe I did.

"Q Well, nowhere—I'm getting at, is nowhere in this statement is there ever any indication that you told Judge Brown about the letter.

"A I believe that's what I just told you, I couldn't be sure if I told him or I had not told him.

"Q So you may or may not have told him about the letter, right; is that your testimony today?

"A  I can't say whether I did or I did not."

The magistrate who issued the warrant was called to testify at the omnibus hearing but stated that he had no recollection of the facts stated in the affidavit.

■ Under Arizona law it is clear that a search warrant must be supported by written affidavit or recorded oral testimony given under oath. Our statutes provide as follows:

"§ 13–1443.  Conditions precedent to issuance

"No search warrant shall be issued except on probable cause, supported by affidavit, naming or describing the person and particularly describing the property to be seized and the place to be searched.

"§ 13–1444.  Examination on oath; affidavits

"A.  The magistrate may, before issuing the warrant, examine on oath the person or persons, seeking the warrant, and any witnesses produced, and must take his affidavit, or their affidavits, in writing, and cause the same to be subscribed by the party or parties making the affidavit. The magistrate may also, before issuing the warrant, examine any other sworn affidavit submitted to him which sets forth facts tending to establish probable cause for the issuance of the warrant.

"B.  The affidavit or affidavits must set forth the facts tending to establish the grounds of the application, or probable cause for believing they exist.

"C.  In lieu of, or in addition to, a written affidavit, or affidavits, as provided in subsection A, the magistrate may take an oral statement under oath which shall be recorded on tape, wire, or other comparable method.  This statement may be given in person to the magistrate, or by telephone, radio, or other means of electronic communication.  This statement shall be deemed to be an affidavit for the purposes of issuance of a search warrant.  In such cases if a recording of the sworn statement has been made, the

magistrate shall direct that the statement be transcribed and certified by the magistrate and filed with the court."

And we have held that under the 1971 Amendment to A.R.S. § 13–1444, unrecorded oral testimony cannot be used to cure a deficient affidavit.  *State v. Robertson,* 111 Ariz. 423, 531 P.2d 1134 (1975).

■ Defendant argues on the basis of the above authority that his motion to suppress must be granted due to the State's failure to produce the affidavit.  We disagree.  This is not a situation of oral testimony being used to supplement an otherwise deficient affidavit and there is no question that the affidavit did in fact exist.  Rather, the State presented oral testimony, given under oath and subject to cross-examination, to establish the contents of a missing affidavit.  There is no hint of intentional misconduct or bad faith on the part of the prosecution.  The affidavit was lost and the court was correct in allowing the testimony as to what the affidavit did in fact contain.  Under these circumstances, we feel the court acted properly in allowing the State to prove the contents of the affidavit by oral testimony.

### PROBABLE CAUSE

■ Finally, defendant argues that the affidavit as proved by the State was insufficient to support a finding of probable cause for the issuance of a search warrant. We recognize the dangers of using oral testimony for such a purpose, and there were admittedly understandable inconsistencies in Deputy LaBarbera's testimony on the three occasions he was questioned concerning the affidavit.

It is unclear, for example, from Deputy LaBarbera's testimony whether there was mention in the affidavit of the contents of the letter found in defendant's car.  However, we find it unnecessary to determine that issue of fact since there were sufficient other facts in the affidavit upon which the magistrate might reasonably have based his finding of probable cause. A review of the hearing transcripts dis-

closes that aside from the contents of the letter, Deputy LaBarbera's testimony concerning the affidavit remained consistent in all essential respects, and supports a finding of probable cause for the issuance of the warrant.

> "It is well settled that where a search is based upon a magistrate's rather than a police officer's determination of probate cause, the reviewing court will accept evidence of a less judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant, and will sustain the judicial determination of probable cause so long as there was substantial basis for that conclusion. (citations omitted) Moreover, there is a presumption in favor of the validity of a search warrant. (citation omitted)." *State v. Endreson,* 109 Ariz. 117, 120, 506 P.2d 248, 251 (1973).

Affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.