807 P.2d 520

The STATE of Arizona, Appellee,

v.

Jaime Soto VASQUEZ, Appellant.

No. CR–90–0137–PR.

Supreme Court of Arizona,
En Banc.

Feb. 12, 1991.

Reconsideration Denied April 9, 1991.*

Robert K. Corbin, Former Atty. Gen. by Jessica Gifford Funkhouser, Former Chief Counsel, Crim. Div., Eric A. Bryant, Asst. Atty. Gen., Phoenix, for appellee.

Francisco Leon, P.C. by Francisco Leon, Tucson, for appellant.

* Feldman, V.C.J., voted to grant reconsideration.

## OPINION

MOELLER, Justice.

### JURISDICTION

Jaime Soto Vasquez (defendant) was arrested for unlawful possession of cocaine after police searched his jacket during an investigation of a family fight. Defendant moved to suppress the cocaine, alleging that the police should have limited their search of the jacket to hard objects that could have been weapons. The state argued that the search was proper as a protective pat-down search. The state also argued that the officer had probable cause to arrest defendant and authority to transport him, without regard to defendant's lack of consent. After an evidentiary hearing, the trial court denied defendant's motion to suppress. The court of appeals reversed, holding the search illegal. We granted review pursuant to A.R.S. § 12–120.24 and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3). We conclude that the search was legal and, therefore, we vacate the court of appeals' opinion and affirm the trial court.

### ISSUES

1. Whether the police officer's initial pat-down of defendant's jacket constituted a lawful search.

2. Whether the police officer's reach into the jacket pocket, after the initial pat-down, exceeded the scope of a reasonable and lawful search under the circumstances.

### FACTS AND PROCEDURAL BACKGROUND

At approximately 2:05 a.m., 19 March 1988, Officers Lynch and Slytor of the Tucson Police Department responded to a family fight call. They arrived at an apartment complex and found defendant and his estranged wife standing in the parking lot next to a car. The couple had been arguing. Several apartment residents had gathered to watch from a second-story balcony overlooking the parking lot.

Defendant had been drinking. His wife had been crying. Both appeared upset.

The officers tried to speak with defendant in English, but defendant spoke only limited English. Although the officers believed they had probable cause to arrest defendant for disorderly conduct, they instead chose to separate the couple. Because defendant had been drinking, Officer Lynch decided to drive him home in the patrol car. When defendant said he was cold, Officer Slyter pointed to a jacket in the front seat of the nearby car and asked defendant if he wanted it. Defendant replied, in English, that it was his jacket, and that he wanted it. Officer Lynch then advised defendant that he would first have to search the jacket. Defendant made no objection.

Officer Lynch began to pat down the jacket while holding it in his hand. Because the bulky leather jacket had large pockets, he could not tell if it contained any weapons. Upon reaching into one of the pockets to check for possible weapons, Officer Lynch found the cocaine.

At the hearing on the motion to suppress the cocaine, only Officer Lynch testified. Defense counsel argued that the search was unlawful because the officer should have limited his search to hard objects that could have been weapons. The prosecutor, on the other hand, argued that because the couple had been drinking, were arguing, and were emotionally upset, the officer was entitled to take reasonable steps for his own safety. The prosecutor also argued that the officer had probable cause to arrest defendant for disorderly conduct, and therefore had authority to pat down the defendant prior to transporting him from the scene. The trial court denied defendant's motion to suppress, stating:

[When] the officer[s] went to [the] scene to [ ] respond[ ] to a call of domestic violence, they were met with two subjects who are the suspects of a domestic violence which involved at least one of them being quite emotional, also involved two people at least one of whom had been drinking. When Mr. Vasquez asked for his jacket the officer for his own safety has a right to [pat] down that jacket and check it to make sure there's no weapons in it. Because of the type of

jacket the officer also acted reasonably in checking the pockets and in checking the pockets he finds what he has in his experience known to him to be the packaging for cocaine. Officer then took the cocaine and placed Mr. Vasquez under arrest.

The court of appeals reversed the trial court, holding that the search was not justified because the officer was not "reasonably apprehensive about his safety." *State v. Vasquez*, 165 Ariz. 43, 44, 796 P.2d 475, 476 (1990). It also held that, although a pat-down search is proper when a person is to be transported in a police car, the officer must first obtain the person's consent to transport him. Finding no consent, the court of appeals concluded the pat-down was illegal. Because we hold the search was justified and lawful as a protective search without regard to any intent to transport, we do not separately consider the transportation question.

## DISCUSSION

### *The Initial Pat–Down Search*

■ Defendant contends that Officer Lynch's warrantless search of his jacket violated his fourth amendment right to be free from unreasonable searches. Absent an exception, a warrantless search is presumptively invalid. *State v. Castaneda*, 150 Ariz. 382, 389, 724 P.2d 1, 8 (1986). We must, therefore, determine whether the challenged search meets one of the exceptions to the warrant requirement. We believe it does. The officer conducted a protective search for weapons incident to a valid investigative stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Police may properly seize evidence observed in connection with a legal protective search. Therefore, the cocaine need not be suppressed if the search was permissible. *See State v. Damon*, 18 Ariz.App. 421, 424–25, 502 P.2d 1360, 1363–64 (1972); *State v. Taras*, 19 Ariz.App. 7, 11, 504 P.2d 548, 552 (1973) (evidence of marijuana found during lawful search of vehicle for registration card admissible).

For the search to come within the *Terry* stop and frisk exception, the trial court must have properly found that the officer reasonably feared for his safety or the safety of others. Under this exception, an officer may conduct a warrantless search if the circumstances are "those in which a substantial risk of harm to the persons involved ... would arise if the police were to delay a search until a warrant could be obtained." *United States v. Robertson*, 606 F.2d 853, 859 (9th Cir.1979).

Here, exigent circumstances existed. The officers responded to a family fight-domestic violence call. These calls commonly involve dangerous situations in which the possibility for physical harm or damage escalates rapidly. This court recently recognized that "[t]he call [to a family fight] itself creates a sufficient indication that an exigency exists...." *State v. Greene*, 162 Ariz. 431, 433, 784 P.2d 257, 259 (1989). Police officers must have options when dealing with these situations. *State v. Tassler*, 159 Ariz. 183, 185, 765 P.2d 1007, 1011 (App.1988) ("In responding to a call regarding spousal assault, officers must have the freedom to prevent further abuse.") (citation omitted). Pat-downs are procedures born of the exigencies of street encounters, in recognition that, "[e]ven when the police officer has the upper hand, the tables are easily turned." *People v. Peters*, 18 N.Y.2d 238, 245, 273 N.Y.S.2d 217, 223, 219 N.E.2d 595, 599 (1966).

The trial court found that defendant had been drinking and arguing, and was emotionally upset. The situation was ripe for conflict. Officer Lynch opted to separate the couple, a sound choice in the midst of a spousal dispute. Defendant was cold and asked for his jacket. When the officer told him he would first have to search it, defendant made no objection. We believe officers should have leeway in handling such situations and should not be compelled to act at their peril.

In *Terry*, the United States Supreme Court recognized that police officers must protect themselves in these situations:

Certainly it would be unreasonable to require that police officers take unneces-

sary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

392 U.S. at 23–24, 88 S.Ct. at 1881 (footnote omitted).

Defendant argues that Officer Lynch was unreasonable in searching the bulky jacket before giving it to him. This situation presents the precise danger that the Supreme Court recognized in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). "[A] *Terry* investigation ... involves a police investigation 'at close range,' when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from possible danger.' " *Id.* at 1052, 103 S.Ct. at 3482 (citation omitted) (emphasis in original).

Moreover, we do not require an officer to be all-knowing, only to be prudent and reasonable. The Court in *Terry* specifically held that, when an officer believes he must protect himself through the use of a protective search, he *"need not be absolutely certain that the individual is armed;* the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27, 88 S.Ct. at 1883 (emphasis added).

Here, Officer Lynch was prudent in protecting himself, his fellow officer, and perhaps defendant's wife. It was two o'clock in the morning and dark. Defendant had been drinking and arguing, and his emotions were running high. For the protection of all, it was not only reasonable, but necessary, for Officer Lynch to pat down the jacket for weapons before he handed it to defendant. *See People v. Bowles*, 29 A.D.2d 996, 289 N.Y.S.2d 526, 528 (1968) (police "frisked" unworn pants lying on floor near defendant and found razor;

court stated that it would have been "perilous" to permit defendant to put his trousers on and thus give him access to a dangerous weapon).

Officer Lynch had authority to detain defendant and to conduct a pat-down search, even if he lacked probable cause to arrest him. "When an officer is engaged in an investigation, he may detain a person under circumstances which would not justify an arrest." *State v. Aguirre*, 130 Ariz. 54, 56, 633 P.2d 1047, 1049 (App.1981) (citation omitted).

■ We do not require police to make an arrest before acquiring authority to conduct a protective search. *See Arizona v. Smith*, 112 Ariz. 531, 534, 544 P.2d 213, 216 (1975). "To require that the police arrest everyone to whom they talk in the course of routine police duties would only serve to place an unwarranted burden on both the police and the citizens of the community." *State v. Sherron*, 105 Ariz. 277, 279, 463 P.2d 533, 535 (1970). Police officers must take steps to protect themselves and other potential victims of violence, even when they lack probable cause to arrest. *Terry*, 392 U.S. at 24, 88 S.Ct. at 1881.

"That the inspection of the [jacket] for one purpose—the discovery of a possible weapon—fortuitously yielded an extraneous product—evidence of the possession of [cocaine]—does not offend the fourth amendment." *Williams v. Maryland*, 19 Md.App. 204, 211, 310 A.2d 593, 598 (1973) (citing *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).

*The Scope of the Search*

■ The scope of a protective search is limited to that necessary to protect the officer and others. The scope of the search must be reasonably related to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. We have decided that the initial pat-down was lawful. We must,

however, determine the reasonableness of the officer's further reach into the pocket by balancing the state's interest in searching the jacket against the defendant's interest in freedom from unreasonable government intrusions. *Id.* at 21, 88 S.Ct. at 1879.

■ Defendant argues that once Officer Lynch felt the jacket pockets from the outside and could not feel any weapons, the search should have stopped. Strong state interests, however, support Officer Lynch's further search of the jacket pockets under the facts of this case. A dangerous weapon may well have been inside. Because the jacket was extremely bulky, the officer could not tell from the pat-down alone what, if anything, the jacket pockets contained. For all he knew at that point, he may have been arming the defendant by handing him the jacket.

When Officer Lynch could not ascertain whether the pockets contained a weapon, he searched further. Reaching into the pocket was the only reasonable course of action for the police officer to follow. *See Nash v. Delaware*, 295 A.2d 715, 717 (Del. 1972). Reaching into the pockets was but a minor infringement of defendant's privacy interest. Officer Lynch lawfully conducted a protective search, reasonably believing that a weapon might be concealed in defendant's jacket. He remained vulnerable and in danger until he checked the pockets.

*Terry* recognized that it would be "clearly unreasonable to deny the officer the power to take [all] necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 U.S. at 24, 88 S.Ct. at 1881. Here, the officer's reach into the pockets was a necessary measure as a supplement to the original inconclusive pat-down.

■ Nor will we condemn an officer's reach into pockets merely because, in retrospect, it may appear that another course may have been available. "[A] tactical choice by the police between apparent alternative courses of action cannot be overturned by detached judicial deliberation as long as the course of action taken is in

itself reasonable." *Bailey v. United States*, 279 A.2d 508, 510 (D.C.App.1971).

Having the right to conduct a pat-down search of the jacket, the officer had the right to make the search effective. The act of reaching in the pockets was a reasonable *de minimis* intrusion upon defendant's rights. *See United States v. McClinnhan*, 660 F.2d 500 (D.C.Cir.1981) (briefcase); *United States v. Johnson*, 637 F.2d 532 (8th Cir.1980) (duffel bag); *United States v. Foster*, 584 F.2d 997 (D.C.Cir.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 620, 58 L.Ed.2d 682 (1978) (paper bag); *United States v. Poms*, 484 F.2d 919 (4th Cir.1973) (shoulder bag); *United States v. Berryhill*, 445 F.2d 1189 (9th Cir.1971) (purse); *Bromwell v. State*, 427 A.2d 884 (Del.1981) (cardboard box); *Nash v. State*, 295 A.2d 715 (Del.1972) (small box); *Henighan v. United States*, 433 A.2d 1059 (D.C.App.1981) (purse); *State v. Ortiz*, 67 Haw. 181, 683 P.2d 822 (1984) (knapsack); *People v. Bowles*, 29 A.D.2d 996, 289 N.Y.S.2d 526 (1968) (trousers); and *People v. Pugach*, 15 N.Y.2d 65, 255 N.Y.S.2d 833, 204 N.E.2d 176 (1964), *cert. denied*, 380 U.S. 936, 85 S.Ct. 946, 13 L.Ed.2d 823 (1965) (briefcase).

## CONCLUSION AND DISPOSITION

The challenged search was lawful as a protective search for the officer's safety and the safety of those around him. The officer acted reasonably under the circumstances, and the trial court properly denied the motion to suppress the cocaine. Because we affirm on this basis, we do not consider alternative theories advanced by the state or other matters discussed by the court of appeals.

We vacate the court of appeals' opinion and affirm the conviction and sentence.

GORDON, C.J., and CAMERON and CORCORAN, JJ., concur.

FELDMAN, Vice Chief Justice, dissenting.

I am unable to agree with the court that the pat-down search of defendant's jacket is authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Terry* authorizes a *protective* search for weapons incident to a valid investigative stop. The record does not support the conclusion that the officers' pat-down was a "protective search." As the court of appeals points out, "this [is not] a situation in which the officer was reasonably apprehensive about his safety." *Vasquez*, 165 Ariz. at 44, 796 P.2d at 476. No violence had been reported and none was evident when the officers arrived. Defendant and his wife were not quarreling. The officers evidently felt there was no need for a protective search of any kind because they made no attempt to search defendant when they arrived on the scene. Only after searching the jacket that defendant was not wearing, and consequently arresting defendant, did the officers bother to search the vest, pants, and shoes that he was wearing. Reporter's Transcript (RT) at 21, 22. Self-protection was obviously not the motive for the search. If the officers were concerned about their safety, they could have protected themselves by not offering to give the jacket to defendant. In no sense were these officers, as the majority contends, "compelled to act at their peril." *Id.* at 522.

The majority relies on *Terry*, but this search cannot be upheld under that case, which requires a three-fold predicate to stop and search. The first is that there is reasonable suspicion that criminal activity is afoot. 392 U.S. at 30, 88 S.Ct. at 1884. There was no report of violence here and no suspicion of other criminal activity. Defendant exhibited no threatening behavior toward his wife or the officers. When the officers arrived, in fact, the couple appeared to be "talking," RT at 26, though it appeared the wife had been crying and defendant was "emotionally upset." RT at 14. The officers stated they had no intention to arrest or even cite defendant for anything. RT at 28.

*Terry* requires, second, that there be a reasonable suspicion that the individual

"may be armed and presently dangerous." 392 U.S. at 30, 88 S.Ct. at 1884. As noted, there is no evidence in the record to satisfy this requirement.[1] The officers did not testify that they had any such suspicion about this defendant. In fact, they said he had been cooperative throughout the investigation. RT at 23.

The third *Terry* requirement is that there be nothing in the initial stages of the encounter that dispels the officer's reasonable fear for safety. 392 U.S. at 30, 88 S.Ct. at 1884. This requirement is also not met in the present case. The officers had so little fear for their safety before the jacket incident that they had not bothered to search defendant.

No other reason justified the search. The officers did not intend to arrest defendant, so there was no search incident to an arrest. *Cf. State v. DeRosier*, 133 Ariz. 154, 650 P.2d 456 (1982). The investigating officer later said he intended to offer defendant a ride but he did not tell defendant he was required to ride in the patrol car, nor had defendant requested a ride in the patrol car. RT at 24. Thus, the exception recognized in *State v. Smith*, 112 Ariz. 531, 544 P.2d 213 (1975), allowing a pat-down search before an individual is to be transported in a police vehicle, was inapplicable. In any event, there is considerable question as to the officers' intention to transport defendant. As the court of appeals points out, no such intention was ever articulated "until the hearing on the motion to suppress." *Vasquez*, 165 Ariz. at 44, 796 P.2d at 476.

Nor can the search be justified by consent. One of the officers testified at the suppression hearing that he told defendant he was going to search the jacket and proceeded to search it. There is no evidence in the record as to whether defendant objected, or even had an opportunity to object. RT at 18. Moreover, the officer also stated that defendant spoke only bro-

---

1. It is axiomatic that the specific and articulable facts required to establish reasonable suspicion concerning a particular individual must be available to the officer at the moment of the search or seizure. Generalities cannot suffice.

"This demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." *Terry*, 392 U.S. at 21 n. 18, 88 S.Ct. at 1880 n. 18.

ken English and that the language problem was so great he was unable to investigate the argument, RT at 25, or administer *Miranda* warnings. RT at 21–22. No claim of consent was made by the state nor was consent even mentioned by the trial court in its ruling on the motion to suppress. RT at 38–39.

On this record, I believe the court of appeals was correct in concluding that the pat-down search violated the fourth amendment. Warrantless searches are per se unreasonable, and *Terry* is intended to be a narrow exception. The majority opinion goes much too far. Of course, the fourth amendment does not prevent officers from protecting themselves, but where self-protection is not the issue, as the officers' conduct in the field abundantly demonstrates in this case, we must honor the constitution's prohibition against warrantless searches.