996 P.2d 125

**STATE of Arizona, Appellee,**

v.

**Jesus Gilbert VALLE, Jr., Appellant.**

**No. 1 CA–CR 98–1024.**

Court of Appeals of Arizona,
Division 1, Department A.

Feb. 29, 2000.

Janet A. Napolitano, Arizona Attorney General by Paul J. McMurdie, Chief Counsel Criminal Appeals Section and Gregory A. McCarthy, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BERCH, Judge.

¶1 Defendant Jesus Gilbert Valle, Jr., appeals his convictions and sentences on one count of possession of marijuana and one count of possession of drug paraphernalia, both class six felonies. Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress the marijuana and rolling papers seized from his person. He maintains that these items were discovered by the police during a "pat down" that exceeded the scope permitted by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that the police had no other legitimate basis for conducting the warrantless search. Because we agree with Defendant that the arresting officer unlawfully seized both the drugs and the drug paraphernalia, we reverse Defendant's convictions.

## FACTS

¶2 On the evening of July 18, 1997, police officers assigned to the Arizona State Gang Task Force were patrolling the Town of Guadalupe, conducting traffic stops of vehicles in an area known for gang activity. Task Force Officer David Barnes and his partner stopped Defendant's vehicle upon observing that it had a cracked windshield and that its license plate was not illuminated. In addition to Defendant, who was the driver, the vehicle carried two passengers. After initiating the stop, Officer Barnes noticed that Defendant smelled of marijuana. Offi-

cer Barnes asked Defendant for his driver's license and requested that he step out of the car. Once Defendant was standing outside the vehicle, Officer Barnes asked him if he was carrying "any marijuana or contraband." Defendant replied that he was not.

¶ 3 Officer Barnes then conducted a "pat-down" search of Defendant's person. Barnes later gave the following justification for the pat-down:

Q: And what was the basis for conducting the pat-down search?

A: Based on the smell of marijuana on him, and also the officer that was with me who had taken a passenger, the front passenger of the vehicle, that officer had found a large amount of marijuana on that passenger.

. . . .

Q: Was another basis for your search to "pat down" for weapons as well?

A: Yes, it was.

Q: And why was that?

A: Guadalupe has been having a problem with gangs. The Sheriff's Office has been having a problem with drive-by shootings, and so it's basically DPS's policy that we'll conduct pat down for weapons and contraband, once we get people out of the vehicles.

¶ 4 During the pat-down, Officer Barnes felt "an object" in the right front pocket of Defendant's pants. The object did not feel like a weapon or other metal object, and nothing in the record suggests that, by touching the object through Defendant's clothing, Barnes knew that it was contraband. Nevertheless, Officer Barnes reached into Defendant's pocket and removed the object, which turned out to be a package of Zig Zag rolling papers. After completing the pat-down of Defendant's clothing, Officer Barnes directed [1] Defendant to remove his shoes. The officer found a small bag of marijuana in one of the shoes.

---

**1.** The record indicates that the officer *asked* Defendant to remove his shoes and that Defendant complied with the request. Neither party, however, has characterized the search as one based on consent. *See, e.g., West Virginia v. Hlavacek,* 185 W.Va. 371, 407 S.E.2d 375 (1991) (asking suspect to empty his pockets in lieu of pat-down

¶ 5 The State charged Defendant with possession of marijuana and possession of drug paraphernalia. Defendant moved to suppress both the marijuana and the Zig Zag papers, arguing that the search conducted by Officer Barnes exceeded the scope of the pat-down permitted by *Terry v. Ohio.* The trial court denied the motion. Defendant waived his right to a jury trial, and the parties submitted the case to the trial court on the police report. Defendant was convicted of both counts, and he timely appealed.

## DISCUSSION

¶ 6 In reviewing the denial of Defendant's motion to suppress, we must defer to the trial court's factual findings absent an abuse of discretion. *See State v. Peters,* 189 Ariz. 216, 218, 941 P.2d 228, 230 (1997). We review *de novo,* however, the trial court's ultimate legal determination that the search complied with the dictates of the Fourth Amendment. *See State v. Ochoa,* 189 Ariz. 454, 461, 943 P.2d 814, 821 (App.1997) (citing *State v. Gonzalez–Gutierrez,* 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996)).

### A. The Scope of Terry Pat–Down Searches

### 1. The Seizure of the Rolling Papers from Defendant's Pocket

¶ 7 Defendant concedes that the officers were justified in stopping his vehicle and conducting a pat-down search of the occupants for weapons pursuant to *Terry.* The sole argument presented on appeal with respect to the rolling papers is that the officer exceeded the bounds of the *Terry* pat-down when he placed his hand in Defendant's pocket and withdrew the rolling papers.

¶ 8 The State argues that Officer Barnes "had probable cause to believe that the object [in Defendant's pocket] was contraband." And in denying Defendant's motion to sup-

---

exceeded scope of *Terry* ); *cf. State v. Rogers,* 186 Ariz. 508, 511, 924 P.2d 1027, 1030 (1996) (citing *United States v. Morgan,* 936 F.2d 1561, 1565, 1567 (10th Cir.1991)) (momentarily yielding to officer's direction to "hold up" is yielding to show of authority).

press, the trial court found that "[a] 'pat down' of the defendant for weapons or contraband revealed that the defendant had rolling papers in one of his front pants pockets." Our review of the record, however, reveals no evidence to support a finding that the officer reasonably believed the item he felt was a weapon or that it was immediately identifiable as contraband, either of which would have justified the removal of the rolling papers from Defendant's pocket as a legitimate part of the *Terry* pat-down. *See State v. Spears*, 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996) (in reviewing denial of motion to suppress, appellate court may only consider evidence presented to trial court during suppression hearing); *State v. Flower*, 161 Ariz. 283, 286 n. 1, 778 P.2d 1179, 1182 n. 1 (1989) (same).

▮ ¶ 9   Pursuant to *Terry,* a police officer may lawfully conduct a pat-down search when the officer "is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." 392 U.S. at 24, 88 S.Ct. 1868.   The officer may conduct the pat-down solely "to determine whether the person is in fact carrying a weapon." *Id.* "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).   Accordingly, the search "must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (quoting *Terry,* 392 U.S. at 26, 88 S.Ct. 1868).   Defendant has conceded the reasonableness of the initial pat-down for weapons.

¶ 10   The United States Supreme Court has held that if, during the course of a *Terry* search, "a police officer pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent" as contraband, the officer may lawfully seize the item. *Dickerson,* 508 U.S. at 375–76, 113 S.Ct. 2130.   This "plain feel" exception does not apply in this case, however, because the State presented no evidence at the suppression hearing to suggest that Officer Barnes immediately recognized the object in Defendant's front pocket as contraband when he felt the item during the pat-down search. *See Pima County Juv. Delinquency Action No. J–103621–01,* 181 Ariz. 375, 378, 891 P.2d 243, 246 (App.1995) (rejecting "plain feel" exception argument when state presented no evidence that arresting officer knew from sense of feel that item in pocket was contraband); *see also State v. Collins,* 139 Ariz. 434, 437, 679 P.2d 80, 82 (App.1984) (Corcoran, J.) (officer's reaching into defendant's pockets to remove "soft" objects, not reasonably thought to be weapons, violated Fourth Amendment).[2]   Rather, the officer's testimony plainly indicates that he conducted the search not based on a justifiable belief that Defendant was armed, but pursuant to "DPS's policy that we'll conduct [a] pat-down for weapons and contraband[ ] once we get people out of the vehicles."   In doing so, he discovered only an unidentified object in Defendant's pocket during the pat-down.   Not until Officer Barnes removed the object from Defendant's pocket did he realize that it was drug paraphernalia.

¶ 11   We distinguish *State v. Vasquez,* 167 Ariz. 352, 807 P.2d 520 (1991).   In that case, our supreme court found permissible an officer's search of the pockets of a suspect's jacket.   But the circumstances differ between the cases.   In *Vasquez,* a domestic

---

**2.** West Publishing Company's Keycite electronic database contains a flag warning that *Collins* was "abrogated" by the United States Supreme Court's opinion in *Dickerson,* 508 U.S. at 371 n. 1, 113 S.Ct. 2130. No published Arizona opinion, however, has so found, and we think the observation overstates the effect of *Dickerson* on *Collins.* Although *Collins* may be read as suggesting that Arizona would not recognize a plain feel exception to the warrant requirement—a result that

would be abrogated—any statements to that effect were dicta, as the narrow question presented in *Collins* was whether a search of defendant's pockets exceeded the scope of a *Terry* pat-down. The specific facts of *Collins* limit its holding: The officer did not know what the "soft" items were that he felt in defendant's pockets, but he knew that they were obviously not weapons. 139 Ariz. at 436–37, 679 P.2d at 82–83.

violence suspect who had been drinking and was emotionally upset asked for his jacket before entering a police vehicle. *See id.* at 353, 807 P.2d at 521. The officer responded that he would have to search the bulky jacket before he could give it to the suspect. *See id.* The suspect did not object. *See id.* In one of the pockets, the officer found cocaine. *See id.* In finding the search reasonable, the court focused upon the volatile nature of domestic dispute encounters and the crucial question "whether a reasonably prudent [officer] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 355, 807 P.2d at 523 (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). The court noted that, because of the bulkiness of the jacket, "the officer could not tell from the pat-down alone what, if anything, the jacket pockets contained": "A dangerous weapon may well have been inside." *Id.* at 356, 807 P.2d at 524. In the case before us, on the other hand, the officer could tell that the item in Defendant's pocket was not a dangerous weapon. His act of reaching in was part of a fishing expedition for evidence of crime.

¶ 12   *Terry* and its progeny would have permitted Officer Barnes to remove the object from Defendant's pocket only if he believed that it was a weapon, or if the officer knew, by its feel, that the item was contraband. Officer Barnes expressly testified, however, that he did not believe that the object was a weapon, and there was no testimony or evidence that the officer knew that this item was contraband. Thus, *Terry* does not support the officer's actions. We therefore reverse the trial court's denial of Defendant's motion to suppress the rolling papers.

### 2. The Seizure of the Marijuana from Defendant's Shoe

■   ¶ 13   After removing the rolling papers from Defendant's pocket, Officer Barnes directed Defendant to remove his shoes. *See supra* note 1. When Defendant complied, the officer discovered a small plastic bag containing marijuana in Defendant's left shoe. Officer Barnes stated in his police report that he directed Defendant to remove the shoes "[b]ecause people are known to conceal weapons and contraband in their shoes." The record contains no evidence, however, that Officer Barnes suspected that this individual carried weapons or contraband in his shoes or that the officer conducted a visual inspection or a pat-down of Defendant's shoes before directing Defendant to remove them. Indeed, the record contains no information whatsoever concerning what type of shoes Defendant was wearing or whether Officer Barnes justifiably believed that Defendant had concealed a weapon in them that could have been immediately retrieved and used against him. At the suppression hearing, Officer Barnes testified that there was a "possibility" that Defendant was carrying a weapon in his shoe. When asked for the articulable suspicion supporting that belief, Officer Barnes responded as follows:

> Just based on the reports that we, D.P.S., has [sic] been getting. The information that a lot of weapons are now being found in people's shoes. They're finding razor blades, knives, guns. I was on one traffic stop in Phoenix where a subject had a gun in his shoe, a small gun; so based on that information, intelligence D.P.S. receives, we check the shoes.

¶ 14   In his motion to suppress, Defendant argued that "[t]here [was] no possible way [he] could gain access to a weapon in his shoe," and that Officer Barnes' request that he remove his shoes therefore exceeded the bounds of *Terry.* Although we review the evidence in the light most favorable to sustaining the trial court's ruling, *see State v. Bentlage,* 192 Ariz. 117, 118, 961 P.2d 1065, 1066 (App.1998), we find nothing in the record to show that this Officer justifiably believed that Defendant might actually have hidden a weapon in his shoe or, if he had, that he would have been able to quickly retrieve it. We also find nothing to contradict Defendant's claim that he would not have been able to retrieve a weapon from the shoes that he was wearing the evening of his arrest. *See* 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 9.5(b), at 274 (3d ed.1996) (purpose of *Terry* pat-down "is only to find implements which could readily be grasped by the suspect during the brief face-to-face encounter, not to uncover items which are cleverly

concealed and which could be brought out only with considerable delay and difficulty"). Rather, it appears that Officer Barnes was simply following standard D.P.S. policy when he requested that Defendant remove his shoes. Such a uniform policy cannot substitute for the reasonable, articulable, individualized suspicion that *Terry* requires.

¶ 15 Perhaps realizing that the record in this case is devoid of any evidence that Officer Barnes had a reasonable, articulable suspicion that *this* Defendant might have a weapon in his shoes, the State urges this Court to "extend" *Terry* to create a blanket rule permitting law enforcement officers to request that suspects remove their shoes during the course of *Terry* stops.

¶ 16 Such an all-inclusive rule would, however, contradict the very premise of the *Terry* decision: that officers may conduct minimally intrusive pat-down searches to ensure their safety, but that the reasonableness of each search must be viewed in light of the specific circumstances with which an officer is presented during a given encounter. As the Court observed in *Terry*, "in justifying [a] particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21, 88 S.Ct. 1868. The Court added that "[t]his demand for specificity in the information upon which police action is predicated is the central teaching of ... Fourth Amendment jurisprudence." *Id.* at 21 n. 18, 88 S.Ct. 1868.

¶ 17 In light of these observations, we are convinced that the rationale of *Terry* does not support the blanket rule urged by the State. We are aware that some courts have upheld as reasonable the removal of a suspect's shoes or boots as part of a *Terry*

pat-down. *See, e.g., In re Andre W.,* 256 Neb. 362, 590 N.W.2d 827, 831–32 (1999) (finding that police officer had reasonable and articulable suspicion that juvenile might have concealed weapon in his high-top tennis shoes); *C.G. v. Florida,* 689 So.2d 1246, 1248 (Fla.Dist.Ct.App.1997) (after observing suspect remove his shoe and put it back on his foot, police officer had sufficient articulable suspicion to order suspect to remove shoe); *Stone v. Indiana,* 671 N.E.2d 499, 503 (Ind. Ct.App.1996) (police officer had reasonable suspicion that suspect might be armed and thus court upheld request that suspect remove untied, high-top athletic shoes).[3] These decisions are consistent with *Terry* in that, in each case, the court found the officer's actions to be reasonable in light of his particularized suspicion that the suspect might be carrying an accessible weapon in his shoe. We are aware of no case, however, holding, as the State would have us now hold, that the scope of a *Terry* pat-down may, in every instance and regardless of the presence or absence of reasonable suspicion on the part of a police officer, include an order that the suspect remove his or her shoes so that the officer may look for weapons. We are convinced that the Fourth Amendment would prohibit such a broad interpretation of a law enforcement officer's authority. *See, e.g., Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (eschewing bright-line rules, instead emphasizing fact-specific inquiries in cases implicating Fourth Amendment); *Michigan v. Chesternut,* 486 U.S. 567, 572–73, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988) (rejecting bright-line rule as contrary to "traditional contextual approach"); *Florida v. Bostick,* 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (rejecting per se rule in favor of consideration of "all the circumstances surrounding the encounter"). We therefore decline the State's re-

---

**3.** As noted by LaFave, the "limited search permitted by *Terry* ... is to find weapons 'for the assault of the police officer,' not merely to find weapons." 4 LaFave § 9.5(b), at 274. Accordingly, even if a suspect may conceal a weapon such as a razor, too much beyond a pat-down of a suspect's clothing may violate *Terry*. *See, e.g., Ohio v. Woodford,* 26 Ohio Misc. 51, 56–58, 269 N.E.2d 143, 147–48 (1971) (based on past experience that suspects hide razor blades in hats,

officer searched suspect's hat; search held impermissible because no reasonable ground existed for officer to fear for his or others' safety); *see also Minnesota v. Crook,* 485 N.W.2d 726, 729–30 (Minn.Ct.App.1992) (no basis for looking into suspect's cap, as it was "reasonable to conclude that a weapon such as a razor blade hidden in the cap would not present harm or danger to police officer armed with a gun").

quest that we interpret *Terry* to permit the police to require all suspects to remove their shoes so that officers may search for weapons, regardless of the type of shoe, the accessibility of a weapon, or the degree of articulable suspicion that a particular suspect might be armed and dangerous.

¶ 18 Our ruling today does not foreclose the very real possibility that an officer may in an individual case have a reasonable and articulable suspicion that a suspect is carrying a weapon in his or her shoe and that that weapon is sufficiently accessible to the suspect to present a possible danger to the officer or others. Nothing in the record before us, however, suggests that Officer Barnes had the reasonable, articulable suspicion required to justify his request that Defendant remove his shoes. As noted earlier, the officer did not observe or testify as to the type of shoe Defendant was wearing and whether a weapon, if hidden in the shoe, would have been easily accessible. Nor did the officer attempt to pat-down Defendant's shoes or inspect the inside of the top of the shoe to ascertain whether Defendant had anything usable as a weapon yet easily accessible so concealed.

¶ 19 The State has the burden of proving the legality of a warrantless search. *See Rodriguez v. Arellano*, 194 Ariz. 211, 214, 979 P.2d 539, 542 (App.1999). Because the State failed to meet its burden in this case, we must reverse the trial court's denial of Defendant's motion to suppress the marijuana discovered in his shoe unless the seizure of the drugs can be justified on an independent basis.

B. *Probable Cause to Arrest as Justification for the Search of Defendant's Pocket and Shoes*

¶ 20 The State argues in the alternative that, before searching Defendant's pocket and shoes, Officer Barnes had formed probable cause to arrest Defendant for possession or use of marijuana. It maintains that the seizure of the rolling papers and marijuana was therefore justified as part of a search incident to arrest.

¶ 21 Probable cause to arrest without a warrant exists if the arresting officer possesses information sufficient to justify a reasonable and prudent person in believing that a felony has been committed by the individual arrested. *See State v. Hansen*, 117 Ariz. 496, 497, 573 P.2d 896, 897 (App. 1977) (citing *State v. Miller*, 112 Ariz. 95, 97, 537 P.2d 965, 967 (1975)). The State argues that Officer Barnes had probable cause to believe that Defendant had either used or possessed marijuana because (1) he smelled of marijuana, (2) his passenger had marijuana on his person, (3) he had a "bulge in his pocket," and (4) he was wearing gang insignia.

¶ 22 We note first that the record contains no evidence that Officer Barnes observed a "bulge" in Defendant's front pocket. At most, the record indicates that Officer Barnes *felt* a small, unidentified object in Defendant's pocket during the pat-down. However, the officer obtained no information as a result of the pat-down that led him to immediately conclude that the object in the pocket was contraband. We therefore reject the State's claim that any "bulge" in Defendant's front pocket established probable cause to arrest Defendant.

¶ 23 We also reject the State's claim that Defendant's gang affiliation was relevant in determining whether the officer had probable cause to believe that Defendant either possessed or had used marijuana. The State presented no evidence of any correlation between gang activity and marijuana use. The State has cited no case, nor are we independently aware of any, in which gang affiliation has contributed to a finding of probable cause to arrest for marijuana use or possession. We understand that law enforcement officers operate under a heightened sense of caution when encountering suspects who display gang insignia. We decline, however, to encourage or condone an automatic presumption of suspected drug use or possession based on gang affiliation or display of insignia.

¶ 24 The remaining two factors identified by the State are more persuasive. Certainly the odor of marijuana on a person may contribute to probable cause to believe that that

person has used or possessed marijuana. *See State v. Valenzuela,* 121 Ariz. 274, 275, 589 P.2d 1306, 1307 (1979). This factor alone, however, was insufficient in this case to give rise to probable cause. *See id.* at 276, 589 P.2d at 1308. Here, the odor of marijuana on Defendant's person was not the only fact known to Officer Barnes. He was also aware that Defendant's passenger possessed marijuana. These two factors provide the sole basis for any claim of probable cause to arrest Defendant.

¶ 25 Although we recognize that probable cause is a "practical, non-technical" concept, *see Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)), we are not convinced that these two factors, without other credible indicia of criminal activity, were sufficient to convince a reasonable and prudent person that Defendant possessed marijuana. *See, e.g., Valenzuela,* 121 Ariz. at 276, 589 P.2d at 1308 (suspect standing with group of other people; probable cause not justified by odor of marijuana on suspect and suspect's act of putting hand in pocket).

¶ 26 We find facts in the present case analogous to those presented in *Hansen,* 117 Ariz. at 496, 573 P.2d at 896. In *Hansen,* an officer came upon two people sitting next to one another on a park bench, noticed that one person was smoking what appeared to be a marijuana cigarette, and upon approach detected the odor of marijuana. 117 Ariz. at 497, 573 P.2d at 897. The officer arrested the smoker and Hansen. *See id.* His subsequent search of both individuals revealed a baggie of marijuana on Hansen. *See id.* Hansen moved to suppress the marijuana on the basis that the police officer had no probable cause to believe that he had participated in the possession or use of the marijuana cigarette. *See id.* This Court held that absent evidence of "joint activity" or "joint participation," the act of sitting on a park bench with another person who was smoking marijuana is insufficient to give rise to probable cause to arrest. *Id.* at 498, 573 P.2d at 898; *see also Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) ("[A]

person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

¶ 27 We find the *Hansen* rationale compelling and applicable to the instant case; guilt-by-association does not provide probable cause to arrest. Further, *Hansen* is instructive on another point. The police officer in *Hansen* tried to bootstrap his cause for arresting Hansen by asserting that, based on his experience, "a majority of times when two or more subjects are seated together, it's customary that they all pass around a marijuana cigarette, and they all smoke from that cigarette." 117 Ariz. at 497, 573 P.2d at 897. This Court declined to accept the officer's "rough statistical probability," without more, as "basis for a reasonable and prudent [officer] to conclude that appellant was committing an offense." *Id.* at 498, 573 P.2d at 898.

¶ 28 Accordingly, we hold that Officer Barnes lacked probable cause to arrest Defendant. He therefore was not entitled to search Defendant's pocket and shoes as part of a search incident to arrest.

## CONCLUSION

¶ 29 Because we conclude that the officer's search of Defendant's pocket and shoes exceeded the scope of a permissible *Terry* pat-down, and because the State offers no other independent justification for the seizure of the marijuana and rolling papers, we hold that the trial court erred in denying Defendant's motion to suppress these items. We reverse Defendant's convictions and remand to the trial court for further proceedings consistent with this opinion.

CONCURRING: NOEL FIDEL, Presiding Judge, and THOMAS C. KLEINSCHMIDT, Judge.