[No. 9120–4–I.  Division One.  April 27, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT
TODD KEYSER, *Appellant.*

*William Johnston,* for appellant.

*David S. McEachran, Prosecuting Attorney,* for respondent.

RINGOLD, J.—Robert Todd Keyser appeals from a judgment and sentence for unlawful possession of a controlled substance. The issues presented by this appeal relate to the validity of the search and seizure of marijuana found in the truck Keyser was driving at the time of his arrest. We reverse.

On March 18, 1980, an eyewitness to a strong–arm robbery which had occurred several days earlier informed the Bellingham police that she had just seen the robbery suspect leaving a restaurant. Bellingham police officers stopped the pickup truck driven by Keyser, and containing two passengers.

A Whatcom County deputy sheriff who had been informed by the dispatcher that an eyewitness had just seen the robbery suspect leaving a restaurant and that the Bellingham police believed they were holding the person who matched a composite of the robber was called to the scene. The deputy agreed with the Bellingham officers' conclusion that Keyser matched the composite. Keyser was then arrested and placed in the patrol car.

At this time, two Bellingham police officers who were positioned at the rear of the truck observing the two passengers seated in the truck, felt "uncomfortable" with the

situation due to "a feeling" that the passengers were "very nervous." The officers directed the passengers to exit from the vehicle for a weapons patdown. Finding nothing, one of the officers then searched underneath the seat of the truck and observed a plastic garbage sack. Upon touching the bag, the officer did not believe the sack contained a weapon. Upon picking up the sack and observing part of the exposed contents, he looked inside and found 1 pound of marijuana. The two passengers and the driver, who was already under arrest for robbery, were arrested for possession of marijuana.

It was later determined that Keyser was not the suspect wanted in the robbery.

After a suppression hearing, the court denied Keyser's motion to suppress and concluded that the vehicle search was reasonable both as a limited self–protective weapons search and as a search incident to lawful arrest. Keyser was convicted of unlawful possession of a controlled substance on uncontested findings.

Keyser's sole contention upon appeal is that the search of his truck and the plastic bag found under the seat was violative of the Fourth Amendment. The State urges that the search was lawful under the alternative theories of (1) a search incident to arrest, (2) a limited self–protective weapons search, (3) the plain view doctrine, or (4) under the exigent circumstances automobile exception.

### Search Incident to Arrest

At the time the police officers searched underneath the seat of the truck, Keyser was in custody and seated in a patrol car. Keyser argues that under such circumstances the search exceeded the scope of a search incident to arrest.

The scope of a search incident to arrest has been limited by the Supreme Court to encompass only those areas within the immediate control of the arrestee. *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). In *Chimel,* the court construed the phrase "'within [the arrestee's] immediate control'" to mean "the area from

within which [the arrestee] might gain possession of a weapon or destructible evidence." *Chimel v. California, supra* at 763. The focus of the *Chimel* immediate control rule is, therefore, upon the arrestee's access to weapons or to destructible evidence. 2 W. LaFave, *Search and Seizure* §§ 6.5–7.1 (1978).

In *State v. Jones,* 2 Wn. App. 627, 472 P.2d 402 (1970), the occupants of a stopped vehicle were placed in custody in a patrol car prior to the officers conducting a search of the vehicle. The search was upheld as a valid inventory search, but with regard to the *Chimel* scope question, the court stated:

> Under the *Chimel* decision, the United States Supreme Court rejected the constitutionality of allowing searches of areas "under the control" of the person arrested. *Chimel* limited searches to the area where a suspect might obtain weapons or obtain and destroy evidence of crimes. In this case, the suspects had been arrested, searched, and placed securely in a police car before the station wagon was searched. Clearly, the three suspects were not in a position to obtain evidence or weapons from the car in which they were riding. This is especially true in view of the fact that several police officers came to the scene of the arrest immediately upon the arrest of defendant. We do not think the search can be sustained as a valid search incident to an arrest.

*State v. Jones, supra* at 633.

As in *Jones,* once Keyser was placed in custody and in the patrol vehicle, the justification for a search of the truck as incident to arrest was removed. There was no longer any danger that Keyser had access to either weapons or destructible evidence in the truck. Accordingly, we hold that the search of the truck cannot be sustained as a valid search incident to Keyser's arrest. *See United States v. Edwards,* 554 F.2d 1331 (5th Cir. 1977); *Jacobs v. United States,* 374 A.2d 850 (D.C. 1977); *State v. Gaut,* 357 So. 2d 513 (La. 1978); *Ulesky v. State,* 379 So. 2d 121 (Fla. Dist. Ct. App. 1979).

Nor does the presence of the two passengers in Keyser's

truck alter our conclusion that the search cannot be sustained as a search incident to Keyser's arrest.

Even if we assume that an arresting officer may conduct a protective search of the passengers for weapons as defined in *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the permissible scope of a search incident to arrest may not be expanded simply because of the presence of third persons. *See United States v. Davis,* 423 F.2d 974 (5th Cir.), *cert. denied,* 400 U.S. 836, 27 L. Ed. 2d 69, 91 S. Ct. 74 (1970). *See generally* 2 W. LaFave § 7.12; W. Ringel, *Searches and Seizures, Arrests and Confessions* § 12.6(b) (2d ed. 1979).

We recognize that in *State v. Palmer,* 5 Wn. App. 405, 487 P.2d 627 (1971), this court expressly reserved resolution of the scope issue presented in *Chimel,* citing several Washington cases which upheld the right to search incident to an arrest with respect to the nearby automobile of the arrestee after the arrestee had been removed by the police officers from the scene of the arrest. *See, e.g., State v. Wilson,* 70 Wn.2d 638, 424 P.2d 650 (1967); *State v. Schwartzenberger,* 70 Wn.2d 103, 422 P.2d 323 (1966); *State v. McClung,* 66 Wn.2d 654, 404 P.2d 460 (1965); and, *State v. Cyr,* 40 Wn.2d 840, 246 P.2d 480 (1952). These cases were, however, decided prior to *Chimel,* and several were based in part upon the authority of *United States v. Rabinowitz,* 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430 (1950), which was overruled in *Chimel v. California, supra. See generally* 2 W. LaFave § 7.1(a).

### PROTECTIVE SEARCH FOR WEAPONS

Though the holdings of *Ybarra v. Illinois,* 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979), and *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980), raise questions as to the validity of a protective search of the passengers and the vehicle, we will assume the legality of the procedure. The dispositive issue is whether the officer conducting the search exceeded the scope of a limited search for weapons when he examined the contents of a bag he knew did not

contain a weapon.

■ In *Terry v. Ohio, supra* at page 29, the court, referring to the scope of a permissible pat–down search, stated:

> The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

Similarly, in *State v. Hobart,* 94 Wn.2d 437, 441, 617 P.2d 429 (1980), the court, in reference to the scope limitations of a weapons search, stated:

> The Supreme Court has approved certain limited exceptions to the requirements of probable cause for searches or seizures. The exception which is relied upon by the prosecution in this case is that which was delineated in *Terry v. Ohio,* [*supra*]. The question before the court there was the legality of the police practice of stopping and "frisking" persons suspected of criminal activity. Recognizing the public interest in the investigation and prevention of crime, the court found that the Fourth Amendment tolerates "stops" which are less intrusive than arrests, where less than probable cause for arrest is present. An officer may briefly detain for limited questioning a person whom he reasonably suspects of criminal activity and may frisk the person for weapons, provided the officer has reasonable grounds to believe that he is armed and dangerous. *This right is accorded in order that the officer may protect himself and others from physical harm, and its scope is strictly limited to the purpose for which it is permitted.*

(Italics ours.)

Here, the officer testified as follows concerning the scope of the search:

> A . . . I felt that we should take the individuals out of the vehicle and frisk them.
> Q For what purpose?
> A For weapons.
>
> . . .
>
> Q What did you do? You got inside the vehicle, and did you reach your hand underneath the seat?
> A Yes, I did.

126

Q  What's the clearance there?
A  Maybe, oh, six, seven inches.
Q  Did you have to move anything?
A  Yes, I did.
Q  What did you move?
A  I moved a garbage sack.
. . .
Q  You reached in. Did you have a flashlight, or anything like that?
A  Yes.
Q  You saw what, a white sack?
A  Correct.
Q  Did you reach in and grab it?
A  Yes, I did.
Q  What's the consistency of what you grabbed? Anything hard in it?
A  Do you want my impression of what it was when I touched it?
Q  Well, did you think it was a gun?
A  Because I already—
Q  Did you think it was a gun when you touched it?
A  No, I didn't.
Q  You didn't. And nevertheless you took that out and looked into it, is that right?
A  I already had a good idea what it was.
Q  And then you picked it out and then you looked inside, is that right?
A  Yes.

The decision in *State v. Hobart, supra,* where the court considered an analogous situation is dispositive here. The court held:

Having discovered "spongy" objects (which could not reasonably be feared as dangerous weapons) in the defendant's pockets, the officer squeezed them, with the obvious purpose of ascertaining whether they had the shape and consistency of balloons commonly used for narcotics. Such a search reaches beyond the scope permitted under the Fourth Amendment, adding to the search for weapons a search for evidence of a crime.

*State v. Hobart, supra* at 446. The officer's search was within the limits of a protective weapons search until he ascertained that the bag did not contain a weapon. The

further investigation into the contents of a bag which did not pose a threat to the officer's safety transformed the weapons search into a general search for evidence prohibited by *Terry v. Ohio, supra,* and cannot be sustained under a weapons search rationale. *See United States v. Hunter,* 550 F.2d 1066 (6th Cir. 1977); *United States v. Del Toro,* 464 F.2d 520 (2d Cir. 1972); *Commonwealth v. Silva,* 366 Mass. 402, 318 N.E.2d 895 (1974); *People v. Collins,* 1 Cal. 3d 658, 463 P.2d 403, 83 Cal. Rptr. 179 (1970); 3 W. LaFave § 9.4(c); W. Ringel § 13.7.

Nor do the facts here support the State's argument that the seizure of the bag and its contents was valid under the plain view doctrine as defined in *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971).

### AUTOMOBILE EXCEPTION

The State argues that the search can be justified under the exigent circumstances exception for movable vehicles or so–called "automobile" exception established in *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925), and *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970).

The automobile exception does not invariably apply because an automobile is involved; there must be probable cause to search a vehicle. *Almeida–Sanchez v. United States,* 413 U.S. 266, 269, 37 L. Ed. 2d 596, 93 S. Ct. 2535 (1973); *State v. Marcum,* 24 Wn. App. 441, 601 P.2d 975 (1979). As one commentator has noted:

> If the circumstances are such that under the *Carroll–Chambers* rule the police may proceed to search the vehicle without first obtaining a warrant, it would appear that only the procedure of acquiring a search warrant is being excused; there still must be grounds upon which a search warrant could have been issued.

2 W. LaFave § 7.2(d), at 530–31.

A search of the record here does not reveal any circumstances which would substantiate a finding of probable cause to search the vehicle. First, there is no indication that there was either a description or any mention of a vehicle

sought in connection with the robbery. Second, there is nothing to suggest an association between Keyser's truck and the robbery. Third, there are no articulable facts which would support a reasonable inference that either the truck contained or that the occupants were hiding fruits of a crime which occurred several days prior to the search.

Since there is no evidence to support a finding of probable cause to search the truck, the exigent circumstances exception for stopped automobiles is not a justification for the search.

The judgment and sentence is reversed and the cause is remanded for further proceedings consistent herewith.

JAMES, C.J., and CALLOW, J., concur.