[No. 29256-1-I.   Division One.   April 5, 1993.]

THE STATE OF WASHINGTON, *Appellant,* v. DAVID C. HUDSON, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Amy Freedheim, Deputy,* for appellant.

*Andrew Stanton* of *Washington Appellate Defender Association,* for respondent.

WEBSTER, C.J. — The State appeals the trial court's suppression of evidence in the prosecution of David C. Hudson, charged with possession of cocaine with intent to deliver. We affirm the trial court's suppression of the evidence based on a lack of probable cause to arrest Hudson.

## FACTS

On February 6, 1991, the King County Police arranged a controlled narcotics buy using a confidential informant (CI). After the CI and the seller, Kelly Higgins, went into the travel trailer, a maroon 1988 Toyota Celica arrived. The driver went inside the trailer for 3 to 4 minutes. Upon leaving, the driver was followed by a police officer who got a good look at the driver, Hudson. The next day, the police arranged a second controlled narcotics buy involving the same participants. After the CI went inside the trailer, Higgins left and was followed three or four blocks. She parked and appeared to meet someone whom the detectives could not identify. Higgins returned to the trailer, the CI gave the good buy signal, and as Higgins attempted to leave she was arrested.

The officers believed Higgins obtained the cocaine from the person with whom she had just made contact and that the source would come looking for the money. The officers waited with Higgins on the trailer steps to see if the source would arrive. Ten to fifteen minutes later Hudson arrived in the same Toyota Celica he had driven the previous evening.

He walked up and made eye contact with Higgins, asking what was going on. Hudson's hands were in the pockets of the bulky leather jacket he was wearing. The officers stood, identified themselves and because they were concerned for their safety, requested that Hudson remove his hands from his pockets.

The officers then patted Hudson down for weapons and found a plastic bag containing cocaine. One officer had felt an unidentifiable hard object in Hudson's coat pocket. The officer reached in, felt an object he believed to be a pager, and a hard, irregular object in a plastic bag which he believed to be rock cocaine. The officer simultaneously removed the pager and the baggie of cocaine from Hudson's pocket.

Hudson was brought to trial August 29, 1991, on a violation of the Uniformed Controlled Substances Act, possession with the intent to deliver cocaine. RCW 69.50. At the CrR 3.6 hearing the officer who discovered the cocaine testified as to his knowledge of how cocaine feels. He indicated that:

He had been in law enforcement for 6½ years; 3 years on patrol, 2½ years in narcotics proactive work and for the past 10 months in the drug enforcement unit. In addition to the specialized narcotics training given to King County detectives, he had taken the Drug Enforcement Agency basic narcotics investigation class. He had seen and felt cocaine in various forms. The form that the cocaine comes in depends primarily on its size. The lowest level of sales are gram-sized powder bindles and chunks of rock cocaine; ⅙ and ⅛ ounces of cocaine are mostly powder with some small flakes and occasionally chunks of cocaine material; ½ ounces are powdery with chunks. An ounce size is a chunk that flakes distinctively when pressed. A kilo is hard and compressed. Chunks are hard-pressed material; they flake apart and are almost like sandstone in texture, but flakier. They won't come off just as powder, rather flake off in layers. It's a crystal-type material, very smooth and flaky. He could not think of anything else that feels quite like it.

The officer further testified as to how the baggie of cocaine in Hudson's pocket felt. He stated that he believed that what

he felt was very consistent with an ounce-size bag of cocaine and that he had handled that size 100 to 200 times. He said the baggie had little powder and flake, and that it was more compatible with a ragged-edge chunk, which would be consistent with a piece broken off of a kilo-sized amount of cocaine. "I removed my hand with what I saw was — what I knew was there, a bag which was suspected cocaine, and placed [Hudson] under arrest". On redirect the officer stated "I knew immediately from feeling it that, that [it] was likely one large chunk of a hard substance, which was likely cocaine."

The trial court concluded that: (1) the officers had a reasonable suspicion to believe that Hudson was potentially involved in criminal activity warranting an investigative stop; (2) the officers had a reasonable suspicion that Hudson was armed and presently dangerous justifying a patdown for weapons; (3) the officer was justified as part of the patdown in reaching into Hudson's pocket after feeling an unidentifiable hard object; and (4) that "as a matter of law the sense of touch alone will not raise a reasonable suspicion to probable cause" and suppressed the evidence of cocaine. The case was dismissed below when the State was unable to proceed after the suppression hearing.

## DISCUSSION

The State claims the officer had probable cause to arrest Hudson because he had immediate knowledge that the baggie contained cocaine even though he relied upon his sense of touch. It contends that the officer's ability to identify the object as cocaine, by touch, was based on his training, experience, and the distinct and unique qualities of cocaine, and is demonstrated by the officer's ability to describe the way cocaine feels with great specificity. The State argues a "plain touch" doctrine exists in Washington and is a narrow exception to the search warrant requirement. The State's position is that sense of touch alone can meet the immediate knowledge requirement of the plain view exception if the sense of touch yields an immediate knowledge of the nature of the item. We disagree.

■ An officer may briefly detain, for limited questioning, a person whom he reasonably suspects of criminal activity and frisk that person for weapons if he has reasonable grounds to believe that person to be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Hobart*, 94 Wn.2d 437, 441, 617 P.2d 429 (1980). A valid frisk is strictly limited to what is necessary for the discovery of weapons. *Terry*, at 20. If, in the course of the frisk, the officer feels what may be a weapon, the officer may take only such action that is necessary to examine the object. *Terry*, at 30. Once it is ascertained that no weapon is involved, the government's limited authority to invade the individual's right to be free of police intrusion is spent; the authority to search ends. *State v. Allen*, 93 Wn.2d 170, 173, 606 P.2d 1235 (1980); *State v. Keyser*, 29 Wn. App. 120, 124, 627 P.2d 978 (1981) (officer's search exceeded limits of a protective weapons search when he continued to investigate the contents of a bag after he ascertained it did not contain a weapon). If an officer removes an object not suspected to be a weapon from the suspect's pocket, the officer has exceeded the scope of the pat-down search and the search becomes an unreasonable intrusion into the individual's private affairs. *State v. Loewen*, 97 Wn.2d 562, 567, 647 P.2d 489 (1982); *State v. Biegel*, 57 Wn. App. 192, 195-96, 787 P.2d 577, *review denied*, 115 Wn.2d 1004 (1990); *Keyser*, at 124.

■ The issue here is whether the officer had probable cause to arrest Hudson after feeling the baggie in his pocket. Our courts have recognized that probable cause may be based upon knowledge gained through any of the senses and that the tactile sense is analogous to the plain view doctrine, at least, to the extent that it can be sufficiently distinctive to warrant a search for weapons. *State v. Broadnax*, 98 Wn.2d 289, 298, 654 P.2d 96 (1982) (citing with approval *State v. Broadnax*, 25 Wn. App. 704, 708, 718, 612 P.2d 391 (1980)). A plain touch exception would necessarily have to meet the three tests of the plain view exception. That is, the police

must have (1) prior justification for the intrusion; (2) inadvertently discovered the incriminating evidence; and (3) immediate knowledge that they have evidence of a crime before them. *State v. Chrisman*, 100 Wn.2d 814, 819, 676 P.2d 419 (1984). The Washington State Supreme Court has found that the immediate knowledge requirement

> is not met if the sense of touch is relied upon exclusively for the recognition of contraband. The tactile sense does not usually result in the *immediate* knowledge of the nature of the item.

*Broadnax*, at 298.

Here, there is no contention concerning the first two prongs of the plain view test. However, as to the third prong, the trial court suppressed the plastic baggie because the officer based his suspicion upon sense of touch alone. During the pat-down search, the officer reached in Hudson's pocket, felt an object he knew was a pager, and a "hard irregular object in a plastic bag". The officer removed both objects from Hudson's pocket even though he did not believe either object was a weapon. We find that since Washington has not recognized a plain touch exception to the search warrant requirement, the court's suppression of the cocaine was proper. The officer's authority to intrude into Hudson's private affairs ceased upon his feeling the objects and forming the belief that they were not weapons. Thus, the subsequent removal of the baggie, to confirm it was cocaine, was an illegal search.

In addition, appellate courts review findings of fact on a motion to suppress to determine if there is substantial evidence to support the finding. *State v. McAlpin*, 36 Wn. App. 707, 713, 677 P.2d 185, *review denied*, 102 Wn.2d 1011 (1984). Substantial evidence is evidence of a quantum sufficient to persuade a fair-minded decisionmaker of the truth of the declared premise. *World Wide Video, Inc. v. Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991), *cert. denied*, 118 L. Ed. 2d 391 (1992).

Here, even if Washington recognized a plain touch exception to the warrant requirement, which it does not, on these facts the trial court had substantial evidence supporting its finding that the officer did not have an immediate knowledge that what he was touching was cocaine. The lack of immediate knowledge is shown by the fact that the officer's testimony as to how this baggie felt was not consistent with his testimony as to how it should have felt. The officer described cocaine as having small porous holes in it, as being either very hard or soapy, and that it could flake apart. The officer described what he felt inside Hudson's pocket as a plastic bag with a chunk of some kind of substance, 2 inches by a little more than 1½ inches across, with "kind of ragged edges". The officer did not testify that what he felt had small porous holes, flaked apart when he touched it or that it felt soapy. The officer stated that the substance in the baggie "crumbl[ed] a little bit". Crumbling is inconsistent with the officer's testimony that material will flake, rather than powder, off a chunk of cocaine.

Further, the officer's testimony was equivocal. He stated that what he felt in Hudson's pocket he believed to be very consistent with an ounce-size bag of cocaine and that "I removed my hand with what I saw was — what I knew was there, a bag which was suspected cocaine, and placed [Hudson] under arrest". On redirect the officer stated "I knew immediately from feeling it that, that [it] was likely one large chunk of a hard substance, which was likely cocaine." An officer's belief that a hard substance is consistent with suspected cocaine or is likely to be cocaine is not the same as an immediate knowledge that it is cocaine. The item felt must not only be "consistent" with cocaine; the officer must have "immediately" recognized the item as cocaine. Stating that something is "consistent with" something else is not the same as identifying it. We take notice of the fact that the sense of touch is not as keen as the sense of smell, sight or even hearing. What the officer felt could be as consistent with hard rock candy, a food item, a small part to a car, or some other such item as it is with rock cocaine. Conse-

quently, the officer by touch could only suspect cocaine and not immediately know the object he felt was cocaine. The officer merely suspected the baggie contained cocaine. Thus, the requirement that the item be immediately recognizable as contraband was not met, the officer did not have probable cause to arrest Hudson, and he exceeded the permissible scope of a *Terry* frisk by taking the plastic baggie out of Hudson's pocket.

We affirm.

SCHOLFIELD and FORREST, JJ., concur.

Review granted at 122 Wn.2d 1009 (1993).