[No. 60482-7.    En Banc.    June 9, 1994.]

THE STATE OF WASHINGTON, *Petitioner*, v. DAVID, C.
HUDSON, *Respondent*.

*Norm Maleng, Prosecuting Attorney, Theresa Fricke, Senior Prosecuting Attorney, Cynthia Gannett, Senior Deputy,* and *Catherine Shaffer* and *Amy J. Freedheim, Deputies,* for · petitioner.

*Andrew P. Stanton* of *Washington Appellate Defender Association,* for respondent.

MADSEN, J. — This case concerns the admissibility of contraband evidence discovered during a weapons frisk and seized without a warrant from Defendant David Hudson's coat pockets. Before trial Hudson moved to suppress the evidence, asserting a violation of his Fourth Amendment right to be free from unreasonable search and seizure. At

the suppression hearing, the arresting officer testified that he immediately recognized the contraband as cocaine through his sense of touch. The State argued that the evidence should be admitted under a "plain feel" exception to the warrant requirement. Video Tape Recorded Proceedings, at 122. The trial court suppressed, holding as a matter of law that touch alone could not satisfy the requirements of the plain view doctrine. The Court of Appeals affirmed the suppression order in *State v. Hudson*, 69 Wn. App. 270, 848 P.2d 216 (1993), and the State petitioned for review. This court granted review to determine whether a plain feel corollary to the plain view doctrine is precluded as a matter of law by prior decisions of this court. We conclude that it is not and remand for a determination in light of this holding.

FACTS

On February 6, 1991, undercover King County police officers were observing a controlled drug purchase by a confidential police informant at a trailer home in south King County. While the police informant and the suspect, Kelly Higgins, were negotiating the drug purchase inside the trailer home, the officers saw a man drive up in a maroon Toyota Celica. The man, Defendant Hudson, went into the trailer, remained for 3 or 4 minutes, and then left in his car. The informant subsequently made the purchase from Higgins and left. The next day the officers obtained a search warrant for the trailer and arranged for their informant to make a second controlled purchase from Higgins. During the purchase the informant showed Higgins $2,400 but, pursuant to police policy, insisted that Higgins have the drugs before giving her the money. Higgins left the trailer but returned a few moments later. She then sold cocaine to the informant. Thereafter, Higgins attempted to leave but the police blocked her exit and arrested her as she started to drive away.

Detectives Gaddy and Turney-Loos believed that Higgins had obtained the cocaine from a source with whom she had just made contact and that the source would come looking

for the money. While the detectives were talking with Higgins on the steps of the trailer, Hudson drove up in the same Toyota Celica that the detectives had seen the previous day. He approached the detectives and asked what was going on. Both of his hands were in the large front pockets of his heavy leather jacket. As Hudson approached, Gaddy displayed his badge, explained to Hudson that he was executing a search warrant of the premises, and told Hudson to remove his hands from his pockets. Hudson appeared dumbfounded and kept his hands in his pockets. The detectives were concerned that Hudson might have a weapon in one of his pockets. Both detectives approached Hudson on either side and held him by the arms. They told him again to take his hands out of his jacket and explained to him that they needed to make sure he had no weapons. When Hudson failed to cooperate, the detectives forcibly removed his hands and placed them on the top of his head. The detectives then patted down the outside of his jacket. Turney-Loos "felt a quite substantial bulge, hard something" in the right jacket pocket which made him "believe even more so that there was likely some kind of a weapon, something in his pocket". Video Tape Recorded Proceedings, at 50-51. Suspecting a weapon, Turney-Loos reached into the pocket to determine whether Hudson was armed. Turney-Loos felt the item he had suspected was a weapon and instantly recognized it as a pager. He also felt paperwork and a baggie containing a "ragged edge chunk" of a substance. Video Tape Recorded Proceedings, at 54. Turney-Loos later testified that he " 'knew immediately from feeling it that [the substance in the baggie] was likely one large chunk of a hard substance, which was likely cocaine' ". Video Tape Recorded Proceedings, at 72. Turney-Loos then informed Gaddy of this discovery, removed the baggie and pager from Hudson's pocket, and confirmed his suspicions. The detectives then arrested Hudson and searched the rest of his pockets finding additional baggies of cocaine and a large quantity of money.

The State charged Hudson with possession of cocaine with intent to deliver. Hudson moved to suppress the contraband

evidence seized from his person. Following the suppression hearing, the court found that the detectives had a reasonable and articulable suspicion that Hudson was involved in a criminal activity warranting an investigative stop. The court also found that the detectives had the right to frisk Hudson because they had particularized and reasonable grounds to believe that Hudson was armed and dangerous. The trial court suppressed the evidence, however, because it also found that:

> As soon as the detective realized he was not feeling a weapon, any further search of the baggie was unjustified.
>
> *State v. Broadnax*, 98 Wn.2d 289, 654 P.2d 96 (1982) guides this court with an expression of disapproval regarding a "plain feel" doctrine. "The tactile sense does not usually result in the *immediate* knowledge of the nature of the item." *Broadnax*, at 298. As in *Broadnax*, Det. Turney-Loos' observations lacked the distinctive smell of marijuana or the unique feel of a weapon. Based on *Broadnax*, as a matter of law the sense of touch alone will not raise a reasonable suspicion to probable cause.

Clerk's Papers, at 48.

The State challenged the trial court's third conclusion and its suppression of the evidence, arguing that a "plain touch" exception "exists in Washington and is a narrow exception to the search warrant requirement". *Hudson*, at 273. The Court of Appeals disagreed. It reasoned that plain touch alone could never meet the requirements of the plain view doctrine because "[t]he tactile sense does not usually result in the *immediate* knowledge of the nature of the item". *Hudson*, at 275 (quoting *State v. Broadnax*, 98 Wn.2d 289, 298, 654 P.2d 96 (1982)). The Court of Appeals held that since Washington "has not recognized a plain touch exception to the search warrant requirement" the trial court's suppression was proper. *Hudson*, at 275. The court then stated that "even if Washington recognized a plain touch exception to the warrant requirement, which it does not", suppression was proper because substantial evidence supported a finding that the detective did not have immediate knowledge that the substance was cocaine. *Hudson*, at 276. Accordingly, the court affirmed the trial court, holding that the detective did

not have probable cause to arrest Hudson and that he exceeded the permissible scope of the *Terry* frisk. The State then petitioned for and was granted review.

## ANALYSIS

█ The Fourth Amendment, made applicable to the states by way of the Fourteenth Amendment, guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. *Mapp v. Ohio*, 367 U.S. 643, 647, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961). Searches and seizures must be supported by probable cause whether or not formal arrest or search by way of warrant has been made. *Dunaway v. New York*, 442 U.S. 200, 208, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979). Although there are exceptions that authorize seizure on lesser cause, these are narrowly drawn and carefully circumscribed. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. White*, 97 Wn.2d 92, 640 P.2d 1061 (1982). One such exception is an investigatory stop or *Terry* stop. *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). In addition to questioning, *Terry* permits the officer to frisk the person for weapons if the officer has reasonable grounds to believe the person to be armed and presently dangerous. *Terry*, at 29; *State v. Hobart*, 94 Wn.2d 437, 441, 617 P.2d 429 (1980). The purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear. *Adams v. Williams*, 407 U.S. 143, 145-46, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972).

██ A search pursuant to a *Terry* stop must be justified not only in its inception, but also in its scope. *Terry*, at 20. A valid weapons frisk is strictly limited in its scope to a search of the outer clothing; a patdown to discover weapons which might be used to assault the officer. *Terry*, at 29-30. There are, however, cases where the patdown is inconclusive, in which case reaching into the clothing is the only reasonable course of action for the police officer to follow. *State v. Allen*, 93 Wn.2d 170, 172, 606 P.2d 1235 (1980); *see also State v. Vasquez*, 167 Ariz. 352, 807 P.2d 520 (1991) (heavy clothing

rendered exterior patdown inconclusive). If the officer feels an item of questionable identity that has the size and density such that it might or might not be a weapon, the officer may only take such action as is necessary to examine such object. *Terry*, at 30. "[O]nce it is ascertained that no weapon is involved, the government's limited authority to invade the individual's right to be free of police intrusion is spent" and any continuing search without probable cause becomes an unreasonable intrusion into the individual's private affairs. *Allen*, at 173. Illustrative is *Hobart*, at 440, where a police officer felt spongy objects in the suspect's pockets during a weapons patdown. Although the officer had no fear that the objects were weapons, the officer squeezed them and determined that they were balloons containing narcotics. The court held that once the officer had ascertained that the objects were not weapons, the permissible scope of the search had ended and any further search required probable cause. The court warned that "[t]o approve the use of evidence of some offense unrelated to weapons would be to invite the use of weapons' searches as a pretext for unwarranted searches". *Hobart*, at 447; *see also State v. Loewen*, 97 Wn.2d 562, 567, 647 P.2d 489 (1982) (discovery of drug paraphernalia during a weapons search was unreasonable because it exceeded the scope of the weapons search; officer intended to search for contraband); *State v. Biegel*, 57 Wn. App. 192, 195-96, 787 P.2d 577 (officer's discovery of cocaine exceeded scope of weapons frisk), *review denied*, 115 Wn.2d 1004 (1990); *State v. Keyser*, 29 Wn. App. 120, 124-27, 627 P.2d 978 (1981) (officer's search exceeded limits of a protective weapons search when he continued to investigate the contents of a bag after he ascertained it did not contain a weapon).

In this case, the State asserts that if an officer discovers contraband incident to a justifiable *Terry* stop and weapons frisk, warrantless seizure of the substance may be justified if the discovery meets the requirements of the "plain view" exception to the warrant requirement. *State v. Myers*, 117 Wn.2d 332, 346, 815 P.2d 761 (1991); *State v. Chrisman*, 100

Wn.2d 814, 819, 676 P.2d 419 (1984). The plain view doctrine is applicable where the police are justified by warrant, or by an exception to the warrant requirement, to search in a protected area for a specified object. If, in the course of that search, they happen across some item for which they had not been searching and the incriminating character of the item is immediately recognizable, that item may be seized. *Myers*, at 346.[1]

█ The plain view doctrine has an obvious application by analogy to cases where an officer inadvertently discovers contraband during an otherwise lawful weapons search: If an officer lawfully pats down a suspect and feels an object possessing characteristics that make its identity as contraband immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the search for weapons. In this case, both the trial court and the Court of Appeals incorrectly held that *Broadnax* precluded such a plain touch exception.

Incident to a premises search warrant, the officer in *Broadnax* stopped a suspect under a reasonable suspicion that the suspect was involved in criminal activities. The officer then conducted a weapons patdown incident to the *Terry* stop even though nothing indicated that the suspect was armed or presently dangerous. While patting down the suspect, the officer felt a small bulge in the suspect's shirt pocket. He suspected that the bulge was contraband and removed the item, revealing it to be a balloon containing heroin. *Broadnax*, at 293. The Court of Appeals held that the pat-down search was reasonable and that the seizure did not exceed the permissible scope of the search, based in part on an analogy to cases employing the plain view doctrine. This court reversed, holding that the officer exceeded the scope of a *Terry* stop both by conducting a weapons frisk without a reasonable suspicion that the suspect was armed

---

[1]While the plain view doctrine was recently revised in *Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990) (inadvertent discovery is no longer required under the Fourth Amendment to justify seizure of evidence in plain view), the change does not affect the analysis in this case.

and by continuing to search the defendant's pockets after ascertaining that he was not armed. *Broadnax*, at 304.

The *Broadnax* court found particular fault with the Court of Appeals' analogy of the facts to "cases where the odor of marijuana has been held sufficient to create probable cause to search and arrest, . . . and with cases employing the plain view doctrine". (Citations omitted.) *Broadnax*, at 298. Specifically, the court stated that the immediate knowledge requirement of the plain view doctrine "is not met if the sense of touch is relied upon exclusively for the recognition of contraband". *Broadnax*, at 298. The court explained further that the "tactile sense does not usually result in the *immediate* knowledge of the nature of the item" and that the officer's observations in the case at hand lacked "'the distinctive character of the smell of marijuana or the hardness of a weapon". *Broadnax*, at 298 (quoting *State v. Broadnax*, 25 Wn. App. 704, 718, 612 P.2d 391 (1980) (Ringold, J., dissenting)). Thus, the court stated "[a] soft bulge in a shirt pocket is not alone sufficient information to find probable cause to arrest". *Broadnax*, at 298.

▇ Although *Broadnax* clearly acknowledges the limitations of the tactile sense under the plain view doctrine, it does not hold "as a matter of law" that the sense of touch cannot satisfy the immediate knowledge requirement. Clerk's Papers, at 48. On the contrary, *Broadnax* implicitly recognizes that a warrantless seizure may be justified by touch alone where the item has a "distinctive character" such as the "hardness of a weapon". *Broadnax*, at 298. *Broadnax* merely acknowledged that touch alone cannot "usually" result in immediate recognition of contraband. *Broadnax*, at 298. This is because the sense of touch is inherently less immediate and less accurate than the other senses. Thus, rather than categorically denying that the tactile sense can satisfy the requirements of the plain view doctrine, the *Broadnax* court merely recognized its limitations. If recognition of the contraband is as immediate and as accurate as recognition of a weapon, then the third requirement of the plain view doctrine may be satisfied.

This is consistent with the position recently adopted by the United States Supreme Court in *Minnesota v. Dickerson*, 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130 (1993).

In *Dickerson*, a police officer conducted a lawful *Terry* stop and weapons search and in the course of that search felt a substance the officer suspected was cocaine. After manipulating the object, the officer removed the substance, confirming his suspicions. The trial court held that warrantless seizure was justified under the plain view doctrine. The Minnesota Supreme Court disagreed, holding that the plain view doctrine had not been satisfied and that the officer had exceeded the permissible scope of the weapons search.

The United States Supreme Court agreed with the Minnesota Supreme Court's holding that the seizure was unreasonable in that case, but emphasized that the sense of touch is sufficiently reliable to support a seizure in certain cases. The Court stated:

> The very premise of *Terry*, after all, is that officers will be able to detect the presence of weapons through the sense of touch and *Terry* upheld precisely such a seizure. Even if it were true that the sense of touch is generally less reliable than the sense of sight, that only suggests that officers will less often be able to justify seizures of unseen contraband. Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures.

*Dickerson*, 508 U.S. at 376. The Court then reasoned that the particular intrusiveness of a touching is insignificant "in light of the fact that the intrusion . . . has already been authorized by the lawful search for weapons". *Dickerson*, 508 U.S. at 377. The Court reasoned that touch alone could yield immediate knowledge sufficient to satisfy the plain view doctrine where the officer "feels an object whose contour or mass makes its identity immediately apparent". *Dickerson*, 508 U.S. at 375. The Court emphasized, however, that in the case at hand the officer recognized the contraband only by " 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket' — a

pocket which the officer already knew contained no weapon". *Dickerson*, 113 S. Ct. at 2138 (quoting *State v. Dickerson*, 481 N.W.2d 840, 844 (Minn. 1992)). The officer's continuing manipulation of the suspect's pockets, even after he knew there was no weapon, constituted an additional search beyond the scope of *Terry*. Since no probable cause and no exception existed for this additional search, it was "constitutionally invalid". *Dickerson*, 113 S. Ct. at 2139.

Like the circumstances in *Dickerson*, the discovery of drugs in this case followed a valid *Terry* stop and weapons search.[2] Unlike that case, however, it is not clear from the trial court's findings whether the detective's recognition of the cocaine in this case satisfied the requirement of immediate knowledge. The Court of Appeals found that substantial evidence supported the trial court's finding that "the officer did not have an immediate knowledge that what he was touching was cocaine". *Hudson*, at 276. However, the trial court did not make that finding.

In the undisputed facts, the trial court only noted:

> Detective Turney-Loos believed the baggie he was feeling was cocaine broken off from a larger block (kilo-size) of cocaine. It was [*sic*] one of several ways cocaine appears. The detective has seen and felt cocaine in various forms. He's been in law enforcement for 6-1/2 years; three years on patrol, two and a half in narcotics proactive work and for the past ten months with the Drug Enforcement Unit. Besides the regular and specialized narcotics training given to King County detectives he has taken the DEA basic narcotics investigation class.

> Turney-Loos said cocaine comes in various forms depending primarily on the size of narcotics. Gram-sized powder bindles and chunks of rock cocaine are the smaller units. 1/16 oz. and 1/8 oz. is a powder with flakes and 1/2 oz. is powdery with chunks. An ounce size is a chunk that flakes distinctively when pressed. A kilo is hard and compressed. Detective Turney-Loos believed he was feeling a one ounce size piece of cocaine broken off a kilo size.

> He removed the pager and the cocaine simultaneously. Based on his training and experience he said a weapon could be the size of a pager (see State Exhibit #4) and that some pagers are actually weapons. He did not remove the objects to

---

[2]Hudson does not challenge the trial court's finding that the *Terry* stop was justified. He also agrees that the officers were justified in doing a pat-down search for weapons.

ascertain whether or not they were weapons. He was not acting out of concern for his safety.

Clerk's Papers, at 45-46. We note initially that probable cause is required to satisfy the immediate recognition prong of the "plain view" doctrine. *Arizona v. Hicks*, 480 U.S. 321, 326, 94 L. Ed. 2d 347, 107 S. Ct. 1149 (1987). Objects are immediately apparent when, considering the surrounding circumstances, the police can reasonably conclude that the substance before them is incriminating evidence. *State v. Lair*, 95 Wn.2d 706, 716, 630 P.2d 427 (1981); *State v. Murray*, 84 Wn.2d 527, 535, 527 P.2d 1303 (1974), *cert. denied*, 421 U.S. 1004 (1975). The probable cause standard has since been applied in the context of tactile discoveries of contraband. *Dickerson*, 113 S. Ct. at 2137. Police must have probable cause to believe the object they have touched is contraband without conducting some further search, that is, the incriminating character must be immediately apparent. *Dickerson*, 113 S. Ct. at 2137. The findings of fact cited above demonstrate that the detective possessed a detailed knowledge of the tactile qualities of cocaine. The findings also suggest that the trial court believed the detective could identify the cocaine by its feel and that Turney-Loos knew he was touching cocaine before he pulled it out of Hudson's pocket. These facts support an inference that the detective, based on his training and experience, immediately recognized the contents of the baggie as contraband. At the same time, however, Turney-Loos' detailed description of the cocaine found in Hudson's pocket suggests considerable manipulation of the baggie. Turney-Loos stated that the baggie contained "chunks of some kind [of] substance, probably two inches long, probably an inch-and-a-half to a little more across, [with] kind of ragged edges, chunks" and "less powder and shake" making them "consistent with [being] broken off a kilo size amount of cocaine". Video Tape Recorded Proceedings, at 51, 54. In short, the detective described the substance in the baggie with a particularity arguably unattainable without extensive manipulation. This inference is

strengthened by the trial court's conclusion that "[a]s soon as the detective realized he was not feeling a weapon, any further search of the baggie was unjustified." Clerk's Papers, at 48.

Under the analysis in *Dickerson*, manipulation of the items in the jacket pocket was justified to the extent necessary to determine whether Hudson was armed. However, as the Court in *Dickerson* emphasized, recognition of contraband by " 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket' — a pocket which the officer already knew contained no weapon" constitutes an additional search beyond the scope of *Terry*. *Dickerson*, 113 S. Ct. at 2138 (quoting *State v. Dickerson*, 481 N.W.2d at 844). Without probable cause or an exception, any additional search after determining the suspect is unarmed is "constitutionally invalid". *Dickerson*, 113 S. Ct. at 2139.

The question of immediate recognition is further complicated by the fact that the trial court made no clear finding of probable cause. The court only stated in its conclusions that "the sense of touch alone will not raise a reasonable suspicion to probable cause". Clerk's Papers, at 48. Since the trial court also held that *Broadnax* precludes a finding of probable cause based on touch alone, we are uncertain whether this conclusion regarding probable cause was based on an erroneous interpretation of *Broadnax* or on the testimony of the detective. As the Court of Appeals pointed out, Turney-Loos' testimony that the substance had tactile qualities that would be "consistent" with cocaine or that the substance was "likely" to be cocaine is not the same or sufficiently certain to constitute an immediate knowledge that it is cocaine. *Hudson*, at 276. "What the officer felt could be as consistent with hard rock candy, a food item, a small part to a car, or some other such item as it is with rock cocaine." *Hudson*, at 276.

In view of the trial court's findings and its interpretation of *Broadnax*, we are unclear whether the detective's discovery was made before he knew the Defendant was unarmed and whether the detective's recognition of the

cocaine was immediate, *i.e.*, not the result of manipulation. While we hold that a plain feel corollary to the plain view doctrine is not precluded as a matter of law, it is the trial court which must make the determination whether the nature of the particular object at issue is such that there can be a credible claim of recognition by touch. *United States v. Pace,* 709 F. Supp. 948 (C.D. Cal. 1989). We find it appropriate, therefore, to remand for factual determinations on these issues in light of this opinion.

Turning briefly to the Defendant's supplemental brief, Hudson raises a state constitutional claim. It is supported by the appropriate *Gunwall* factors. *See State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986); *see also State v. Boland,* 115 Wn.2d 571, 576, 800 P.2d 1112 (1990) (holding that it is only necessary to examine the fourth and sixth *Gunwall* factors when determining whether a search violated Const. art. 1, § 7). Nevertheless, Hudson's failure to employ this argument until his supplemental brief precludes us from addressing his state constitutional claim. *State v. Clark,* 124 Wn.2d 90, 875 P.2d 613 (1994); *State v. Wethered,* 110 Wn.2d 466, 755 P. 2d 797 (1988). To allow Hudson to engage in a full *Gunwall* analysis so late in the appeal would encourage parties to save their state constitutional claims for the reply brief and would lead to unbalanced and incomplete development of the issues for review. *See Wood v. Postelthwaite,* 82 Wn.2d 387, 389, 510 P.2d 1109 (1973) ("To allow the petitioner to raise issues not addressed in his petition would be an injustice to the party opposing the petition and inconsistent with the rules on appeal."); *see also* RAP 10.3(c) (reply brief should be limited to a response to the issues in the brief); RAP 13.7(b) (generally, the Supreme Court will review only the questions raised in the petition for review and the answer). This concern is particularly relevant here as demonstrated by the fact that the State, being unaware of Hudson's state constitutional claim, never engaged in state constitutional analysis in its briefing. We decline to address Hudson's state constitutional claim for these reasons.

The Court of Appeals is reversed and the matter is remanded for factual determinations in light of this opinion.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

Reconsideration denied August 12, 1994.