2015 AUG 17 AM 9: 36


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 71608-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MOHAMED A. AHMED, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 17, 2015 |

SCHINDLER, J. — Mohamed A. Ahmed appeals his jury conviction of theft in the third degree. Ahmed asserts the trial court erred in denying his motion to suppress on the ground that the police officers exceeded the scope of a lawful protective frisk. Ahmed also asserts the court erred in denying his motion to suppress custodial statements on the ground that he did not waive his Miranda[1] rights. Because the record establishes the officers did not exceed the scope of the protective frisk and Ahmed waived his Miranda rights, we affirm.

FACTS

The State charged Mohamed A. Ahmed with robbery in the second degree. The information alleged he stole several small bottles of wine from a 7-Eleven store and threatened the store clerk with a knife.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Ahmed represented himself during the pretrial proceedings and at trial. Before trial, Ahmed filed a motion to suppress custodial statements he made to police officers and the wine seized after his arrest. Ahmed argued the police officers exceeded the scope of a lawful protective frisk by removing a wine bottle from his pocket. Ahmed also claimed he was arrested without probable cause, and the wine bottles and his custodial statements were products of an unlawful arrest.[2]

The two officers who arrested Ahmed testified at the suppression hearing. The court also admitted into evidence audio and video footage of the arrest from the two patrol car dashboard cameras.

The testimony at the suppression hearing established that at around 9:45 p.m. on August 21, 2013, Seattle Police Officer Lloyd Harris responded to a report of a robbery at a Seattle 7-Eleven store. When Officer Harris arrived at 7-Eleven, the store clerk was standing outside. The clerk described the man who stole the small wine bottles as a "black male, bald, wearing a white shirt, black shirt underneath, and blue jeans." The clerk said that when he confronted the man about paying for the wine, the man threatened him with a small knife that he was carrying in his front pants pocket. The clerk said that the man fled toward the bowling alley that is kitty-corner and about 100 yards from the 7-Eleven.

Minutes later, Officer Harris saw a man in the bowling alley parking lot who "matched perfectly" the clerk's description of the person. Officer Harris asked the man, later identified as Mohamed A. Ahmed, "if he would come talk." Officer Harris asked

---

[2] In a separate motion, Ahmed argued the audio and video recordings from patrol car dashboard cameras were inadmissible because police officers failed to inform him that he was being recorded.

Ahmed for his identification and told him that he was being recorded. Ahmed appeared to be intoxicated.

Although Officer Harris requested it multiple times, Ahmed did not provide his identification. Ahmed also claimed he had military identification but did not provide it. Instead, Ahmed continually asked why Officer Harris wanted to talk to him. Officer Harris explained that Ahmed matched the description of someone he was looking for. Officer Harris testified that because he was alone and Ahmed "matched the description of the suspect that just robbed the 7-Eleven at knife point," and it was "probably likely" that Ahmed was carrying a knife, he did not want to engage in further discussion with Ahmed and "kept [his] distance" until a second officer arrived.

When Seattle Police Officer Jacob Leenstra arrived, Officer Harris placed Ahmed in handcuffs and conducted a protective frisk to search for "a weapon, sharp objects, . . . anything that could be a danger or used as a weapon against us." Officer Harris testified that based on the information he had that Ahmed had a knife in his front pocket, he "started a frisk on the left side of [Ahmed's] body as the suspect in the robbery was supposedly armed with a knife." Officer Harris said that as soon as he "went to [Ahmed's] front left pocket[,] there was a chilled, sweating, small bottle of wine" in that pocket. Officer Harris immediately told Officer Leenstra that "there was a bottle of wine" and stopped the frisk. Officer Leenstra then placed Ahmed under arrest for robbery and read Ahmed his Miranda rights.

After placing Ahmed under arrest, Officers Harris and Officer Leenstra conducted a search incident to arrest and removed a bottle of wine from each of his front pockets and a third bottle from his back pants pocket. The police officers did not recover a knife.

Ahmed denied having been at the 7-Eleven store. Ahmed told the officers that he purchased the wine at another store for $20. Officer Harris testified that the 7-Eleven store clerk identified Ahmed as the person who took the wine bottles and then threatened him. The trial court denied Ahmed's motion to suppress.

During his testimony at trial, Ahmed admitted he left the 7-Eleven store with wine bottles that he had not paid for but said he did so only because he inadvertently left his wallet at the bowling alley. Ahmed said he intended to return to the store to pay. Ahmed denied threatening the clerk with a knife. A jury acquitted Ahmed of robbery in the second degree but convicted him of the lesser-included crime of theft in the third degree, a gross misdemeanor. Ahmed appeals.

ANALYSIS

Entry of Findings of Fact and Conclusions of Law

After Ahmed filed his opening brief on appeal, the trial court entered written findings of fact and conclusions of law on the motion to suppress. We granted Ahmed's motion to assert additional assignments of error in the reply brief. Ahmed does not claim that the delay in entry of the findings of fact and conclusions of law prejudiced him or that the findings and conclusions were tailored to address the issues raised on appeal. State v. Landsiedel, 165 Wn. App. 886, 893-94, 269 P.3d 347 (2012); State v. Cannon, 130 Wn.2d 313, 330, 922 P.2d 1293 (1996).

Motion To Suppress Wine Bottles

Ahmed contends the trial court erred in denying his motion to suppress the wine bottles seized after he was placed under arrest.

4

We review a trial court's ruling on a motion to suppress evidence to determine whether substantial evidence supports the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law. State v. Russell, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). We review a trial court's legal conclusions de novo. State v. Roden, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014). Unchallenged findings of fact are verities on appeal. State v. Bonds, 174 Wn. App. 553, 563, 299 P.3d 663 (2013). Credibility determinations are the prerogative of the trial court and are not subject to review. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Ahmed asserts the frisk violated his constitutional rights because it exceeded the scope of a protective search for a weapon.

The Fourth Amendment of the United States Constitution prohibits an unreasonable search and seizure. Article I, section 7 of the Washington Constitution prohibits government intrusion upon private affairs without authority of law. State v. Chacon Arreola, 176 Wn.2d 284, 291, 290 P.3d 983 (2012). Because article I, section 7 grants greater protection to individual privacy rights than the Fourth Amendment, we analyze the issue Ahmed presents under the Washington Constitution. Russell, 180 Wn.2d at 867 n.1.

Warrantless seizures are presumptively unreasonable, and the State bears the burden of establishing the seizure falls within one of the carefully drawn exceptions to the warrant requirement. State v. Z.U.E., No. 89894-4, 2015 WL 4366427, at *3 (Wash. July 16, 2015). One of these exceptions is a brief investigatory detention known as a Terry[3] stop. Z.U.E., 2015 WL 4366427, at *3. A permissible Terry stop requires the State to show the officer had a reasonable suspicion that the detained person was, or

_____

[3] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

was about to be, involved in a crime. Z.U.E., 2015 WL 4366427, at *3. To withstand constitutional scrutiny under the reasonable suspicion standard, the "facts must connect the particular person to the particular crime that the officer seeks to investigate." Z.U.E., 2015 WL 4366427, at *3.[4] During a Terry stop, a police officer is entitled to conduct a limited search of the outer clothing of a person in an attempt to discover weapons that might be used to assault the officer. Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). "The purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear." State v. Hudson, 124 Wn.2d 107, 112, 874 P.2d 160 (1994).

Here, the court's written conclusion of law states:

> It was reasonable for the officers to frisk [Ahmed] because, based on the information that they had received, they had good reason to think that he might be armed. Once the wine bottles were discovered in Mr. Ahmed's pockets during the frisk, officers had probable cause to arrest.

Ahmed does not dispute that Officer Harris was justified in detaining him based upon reasonable suspicion and specific and articulable facts. Ahmed also does not dispute that Officer Harris was entitled to conduct a protective search for weapons. Ahmed's concessions are well taken. The unrebutted testimony establishes Officer Harris was justified in detaining Ahmed based upon facts indicating Ahmed was the person who committed the robbery at 7-Eleven, and in conducting a limited search of Ahmed's front pocket to look for the knife Ahmed was reportedly carrying. See Russell, 180 Wn.2d at 868 (police officer could point to specific and articulable facts supporting his belief that the suspect was armed and dangerous including the fact that the suspect

---

[4] Emphasis in original.

lied about being armed with a handgun when the officer encountered the suspect a week earlier).

Ahmed claims that during the protective search, Officer Harris exceeded the scope of a permissible frisk by "scrutinizing an object he did not believe to be a weapon." Relying on selective portions of Officer Harris's testimony and taking the testimony out of context, Ahmed argues that after Officer Harris felt a wine bottle, an item he knew was not a weapon, he continued to search for evidence. The record does not support Ahmed's characterization of what occurred during the protective search. Read in its entirety, the testimony is clear that Officer Harris patted down Ahmed's front pocket because he was "looking for a knife," and when he felt a bottle of wine, Officer Harris stopped the frisk and Officer Leenstra arrested Ahmed.[5]

Ahmed's reliance on State v. Garvin, 166 Wn.2d 242, 207 P.3d 1266 (2009), and State v. Hobart, 94 Wn.2d 437, 617 P.2d 429 (1980), is misplaced. In both Garvin and Hobart, police officers testified they found suspected drugs during a protective frisk and continued to search, not for weapons, but for evidence of drug crimes unrelated to the suspects' detention. Garvin, 166 Wn.2d at 249; Hobart, 94 Wn.2d at 446. And in Garvin, our Supreme Court held that as soon as the officer ascertained the suspect did not have a weapon, "the permissible scope of the search ended and [the officer] needed probable cause to search further." Garvin, 166 Wn.2d at 254. Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference

---

[5] Based on an isolated remark during the oral ruling about whether a glass bottle could potentially be used to assault an officer, the State argues it was within the scope of the protective frisk to remove and examine the bottle. Neither the record nor the trial court's written findings and conclusions support the State's argument. Officer Harris ended the frisk and searched no further upon detecting the bottle. Further, the State fails to recognize that a trial court's oral decision has no binding or final effect unless it is formally incorporated into the written findings or orders. See State v. Dailey, 93 Wn.2d 454, 458-59, 610 P.2d 357 (1980).

that the defendant is involved in criminal activity. See State v. Maddox, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). Here, there was probable cause to arrest Ahmed because he exactly matched the clerk's description of the person who reportedly committed the crime and Officer Harris encountered Ahmed within minutes of the crime in close proximity to the scene of the crime with bulges in his pockets.

Unlike in Garvin and Hobart, the evidence establishes Officer Harris stopped the protective frisk when he felt a wine bottle in Ahmed's front pocket. The record establishes Officer Harris did not exceed the scope of a valid protective frisk.[6]

Custodial Statements

Ahmed contends the trial court erred in concluding that his custodial statements were admissible. Ahmed asserts the evidence does not show that he expressly waived or understood his Miranda rights.

Prior to a custodial interrogation, a defendant must be warned of his right to remain silent and his right to the presence of an attorney. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). When a person is subject to custodial interrogation, any statements made are deemed to be compelled in violation of the Fifth Amendment unless the State can show that before the statements were made, there was a knowing, voluntary, and intelligent waiver of the defendant's Fifth Amendment privilege. State v. Sargent, 111 Wn.2d 641, 648, 762 P.2d 1127 (1988).

---

[6] Ahmed points to some discrepancies between the court's findings of fact and the evidence at the suppression hearing. However, none of the discrepancies he cites are material to the court's ruling on the legality of the protective frisk. Further, we do not address assignments of error to findings that are not addressed in the briefing. See RAP 10.3. And to the extent that Ahmed contends some of the court's findings and conclusions are mislabeled, we review findings of fact and conclusions of law not as they are labeled, but for what they truly are. State v. Luther, 157 Wn.2d 63, 78, 134 P.3d 205 (2006).

The State has the burden of showing a waiver of Miranda rights by a preponderance of the evidence. State v. Athan, 160 Wn.2d 354, 380, 158 P.3d 27 (2007).

In determining whether a defendant voluntarily waived Miranda rights, the appellate court considers the totality of the circumstances. State v. Allen, 63 Wn. App. 623, 626, 821 P.2d 533 (1991). Factors that a court considers include the defendant's physical condition, age, mental abilities, experience, and the conduct of the police. State v. Aten, 130 Wn.2d 640, 663-64, 927 P.2d 210 (1996).

> When a trial court determines a confession is voluntary, that determination is not disturbed on appeal if there is substantial evidence in the record from which the trial court could have found the confession was voluntary by a preponderance of the evidence.

Aten, 130 Wn.2d at 664.

A voluntary waiver need not be express. State v. Terrovona, 105 Wn.2d 632, 646, 716 P.2d 295 (1986). "[A] waiver of Miranda rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.' " Berghuis v. Thompkins, 560 U.S. 370, 384, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010) (quoting North Carolina v. Butler, 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979)); Terrovona, 105 Wn.2d at 646-47 (implied waiver may be found where the defendant is informed of his Miranda rights, understands them, and chooses to volunteer information in the absence of duress, promise, or threat).

Here, the court's written conclusions of law state:

1. The Court finds the testimony of the State's witnesses to be credible.

2. Mr. Ahmed was in custody and was read his Miranda rights. He was in a position to hear Officer Leenstra read him his rights. While there was some level of apparent intoxication, Mr. Ahmed was tracking what

the officers were saying and responded to the parts that he found were important. The officers' conduct in advising the defendant of his rights was appropriate.

3.  Mr. Ahmed did not ask any questions about his <u>Miranda</u> rights, did not show any confusion, and did not indicate that he did not want to speak to the officers.

4.  Although there was no express waiver, the defendant knowingly, intelligently and voluntarily waived his <u>Miranda</u> rights by freely speaking with the officers and answering their questions.

5.  The Court finds that the defendant's statements to Officers Leenstra and Harris are admissible pursuant to an understanding and waiver of the defendant's <u>Miranda</u> rights.

The evidence presented at the suppression hearing clearly showed that Officer Leenstra advised Ahmed of his <u>Miranda</u> rights. Although Ahmed briefly interjected at two points and denied that he committed any crime, he appeared to listen to the advisement. After providing the <u>Miranda</u> warnings to Ahmed, Officer Leenstra twice asked Ahmed directly whether he understood his rights. Ahmed did not answer the question. Instead, he asked whether someone who looked like him had committed a crime. Ahmed then proceeded to talk to the police officers, answering some of their questions, asking several of his own questions, and volunteering information.

The testimony at the suppression hearing and the videotape evidence of the arrest supports the court's determination that although there was no express waiver, Ahmed knowingly, intelligently, and voluntarily waived his <u>Miranda</u> rights by freely speaking with the police officers. Ahmed exhibited no difficulty communicating with the police officers and expressed no confusion about his rights. While Ahmed exhibited some degree of intoxication, he also appeared to understand the officers' questions, appropriately and selectively answered questions, and volunteered statements. By

10

answering some of the police officers' questions and ignoring others, Ahmed's conduct shows he understood he was not compelled to talk to the officers.

Substantial evidence supports the court's findings, and the findings support the court's conclusion that Ahmed implicitly waived his constitutional rights. The trial court did not err in denying Ahmed's motion to suppress his statements.

We affirm.

WE CONCUR: